In the Matter of Bruce A. SMITH, Bankrupt.

No. 4-70-Bky 507.

United States District Court, D. Minnesota, Fourth Division.

Feb. 11, 1971.

Frank A. Dvorak, Mackall, Crounse, Moore, Helmey & Holmes, Minneapolis, Minn., for Community Credit Co. (creditor-claimant).

Edward W. Bergquist, Trustee, Minneapolis, Minn., pro se.

## MEMORANDUM ORDER

LARSON, District Judge.

On or about April 14, 1969, one Bruce A. Smith purchased a 1968 Plymouth automobile from Southtown Chrysler in Minneapolis, Minnesota. At that time he executed a conditional sales contract which was assigned by the seller to the First National Bank of Minneapolis. Neither the seller nor assignee filed a financing statement evidencing the security interest.

In July of 1969 Community Credit Co. lent Mr. Smith money. Mr. Smith at that time executed a chattel mortgage on the Plymouth automobile in favor of the lender. The lender filed a financing statement evidencing the chattel mortgage on July 14, 1969, with the Hennepin County Register of Deeds. At the time of this transaction Community Credit Co. had actual knowledge of the unperfected security interest of the First National Bank of Minneapolis in the automobile.

Bruce A. Smith was duly adjudicated a bankrupt on May 7, 1970, after the filing of a voluntary petition in bankruptcy. The trustee in bankruptcy is given the power of a perfect lien creditor by Section 70(c) of the Bankruptcy Act. He therefore takes priority over and is entitled to avoid the unperfected security interest of the First National Bank of Minneapolis.

Pursuant to the order of the Referee in Bankruptcy the automobile was sold to Community Credit. The sale proceeds are held by the trustee subject to the claim of security interest by Community Credit.

The trustee, however, chose to exercise the option made available to him by Section 70(e) (2) of the Bankruptcy Act. That provision permitted him to preserve the Bank's interest for the benefit of the estate and to assert it against the subsequent lien taken by Community Credit.

There is no dispute that the Bank's security interest is not good against the trustee in bankruptcy. Since it was not perfected either by possession or filing, it remains subject to the rights of the trustee as a perfected lien creditor. The trustee by preserving the Bank's interest and asserting it for the benefit of the estate steps into the shoes of the Bank. His rights are determined by what position the Bank would have been in had there been no bankruptcy proceedings.

The situation presented is one involving conflicting security interests in the same collateral. Community Credit holds a security interest perfected by filing. The Bank's interest is prior in time but is unperfected either by filing or possession. It is conceded by all parties that Community Credit as holder of the perfected security interest would prevail if it had not had actual knowledge of the Bank's prior unperfected interest. Hence the issue raised before the Referee in Bankruptcy and which now faces this Court is whether actual knowledge on the part of Community Credit of the Bank's prior interest prevents it from achieving priority which would have otherwise been obtained by being the first to file. The Referee answered this question in the affirmative and gave priority to the Bank's lien.

The portion of the Minnesota Uniform Commercial Code which governs this situation is M.S.A. § 336.9–312(5) [U.C.C. § 9–312(5)].

"In all cases not governed by other rules stated in this section (including cases of purchase money security interests which do not qualify for the special priorities set forth in subsections (3) and (4) of this section), priority between conflicting security interests in the same collateral shall be determined as follows:

(a) In the order of filing if both are perfected by filing, regardless of which security interest attached first under section 336.9—204(1) and whether it attached before or after filing;

(b) In the order of perfection unless both are perfected by filing, regardless of which security interest attach-

ed first under section 336.9–204(1) and, in the case of a filed security interest, whether it attached before or after filing; and

(c) In the order of attachment under section 336.9–204(1) so long as neither is perfected."

This provision nowhere makes lack of knowledge (good faith) a requirement for obtaining priority. The statute on its face provides for a race to the filing office with actual knowledge of a prior unperfected security interest apparently being irrelevant if one perfects first by filing. Such an approach by the Uniform Commercial Code would clearly be a change in the pre-existing law. Under precode commercial law, actual notice of an earlier unperfected interest in the property would prevent the second interest from obtaining priority. This was true even if the second interest was perfected first by filing.

The change would be one effected by omission rather than an affirmative statement of change. It is the absence of any reference to knowledge or good faith which raises the presumption that it is not relevant. There is no positive statement in Section 336.9–312(5) that knowledge of the earlier interest has no bearing on priority. Under these circumstances, a conclusion that knowledge is not a factor in establishing priorities under Section 336.9–312(5) is predicated on the underlying assumption that the omission of any reference to knowledge was a deliberate one. The Referee in Bankruptcy refused to make that assumption. He came, in fact, to the opposite conclusion, namely, that the absence of any reference to knowledge was unintentional on the part of the code draftsmen. Hence, the instant controversy is *casus omissus* and must be interpreted in light of the common law. As was previously noted, the common law made good faith a critical factor in achieving priority.

The Referee, in reaching his decision that the omission was unintentional, relied heavily on Professor Grant Gilmore's interpretation of the drafting history of Section 9–312(5) of the U.C.C. II. Gilmore, Security Interests in Personal Property § 34.2 (pp. 898–902) 1965. Professor Gilmore acknowledges that Article 9 appears to have discarded good faith as a factor in determining priorities under Section 9–312 of the U.C.C. However, he makes an argument that the result is not clearly an intentional and deliberate one on the part of the draftsmen. Professor Gilmore's analysis fairly questions whether or not the elimination of the good faith provision was a calculated one on the part of the draftsmen of the U.C.C. However, this Court feels that the Referee in Bankruptcy's reliance on that analysis to imply a good cause provision in Section 9–312(5) is misplaced.

It is true that Professor Gilmore suggested implying a good cause provision as one way of approaching Section 9–312 (5). To the contrary he also pointed out that there were some good reasons for disregarding knowledge and creating a race to file situation. One is the protection of the integrity of the filing system. *Gilmore,* pp. 901–902. It is desirable that perfection of interests take place promptly. It is appropriate then to provide that a secured party who fails to file runs the risk of subordination to a later but more diligent party. In this regard it should be pointed out that filing is of particular importance with respect to notice to other parties. It is agreed that where the later party has actual notice there is no need to rely upon a filing to notify him of a prior interest. The problem, however, cannot be analyzed in this narrow context. Some parties may rely on the record in extending credit and obtaining a security agreement in collateral. Although they will prevail over the unperfected prior interest in time if a dispute arises, it is entirely possible that they wanted to avoid the dispute altogether. In other words, they may not have relied on ultimately prevailing in the event of a dispute but they may have relied on the complete absence of a prior interest perfected or otherwise out of which a dis-

pute could arise. The only way this kind of record expectation can be protected is by prompt perfection of all security interests.

Professor Gilmore also recognizes the fact that a good faith requirement creates evidentiary problems.

"[T]he presence or absence of 'knowledge' is a subjective question of fact, difficult to prove. Unless there is an overwhelming policy argument in favor of using such a criterion, it is always wise to discard it and to make decision turn on some easily determinable objective event—as, for example, the date of filing." *Gilmore,* p. 502.

The only way to effectively produce the above result is to make "knowledge" irrelevant and rely solely on perfection to establish priority.

Finally, Professor Gilmore admits that Example 2 in the official comment to Section 9–312(5) seems to indicate that the apparent result was intended. It reads as follows insofar as relevant:

"Example 2. A and B make non-purchase money advances against the same collateral. The collateral is in the debtor's possession and neither interest is perfected when the second advance is made. Whichever secured party first perfects his interest (by taking possession of the collateral or by filing) takes priority and it makes no difference whether or not he knows of the other interest at the time he perfects his own.

Subsections (5) (a) and (5) (b) both lead to this result. It may be regarded as an adoption, in this type of situation, of the idea, deeply rooted at common law, of a race of diligence among creditors. * * *"

The comment is not directly in point because it deals with knowledge at time of perfection and not at the time of attachment. Subsections (5) (a) and (5) (b), however, give priority whether perfection is before or after attachment. Thus, if attachment came after perfection, knowledge at time of perfection

would also mean knowledge at time of attachment. Presumably Example 2 would control in that situation also (although it is not certain since under Example 2's facts, attachment was clearly prior to perfection.) This conclusion is supported by Example 1.

"Example 1. A files against X (debtor) on February 1. B files against X on March 1. B makes a non-purchase money advance against certain collateral on April 1. A makes an advance against the same collateral on May 1. A has priority even though B's advance was made earlier and was perfected when made. *It makes no difference whether or not A knew of B's interest when he made his advance.* * * *"   (Emphasis added.)

This example makes clear that once priority has been achieved by being the first to file, that priority will not be destroyed as to an advance made with the knowledge that a second party has made a prior advance secured by a perfected security interest in the same collateral. This is the case, apparently, even if it is the first advance made under the prior perfected agreement. Similar treatment should be accorded any interest which attached after filing.

■■   It can be seen from the foregoing that Professor Gilmore's position is not an unequivocal one. Furthermore, Professor Gilmore himself admits that the Code Comment to Section 9–312(5) tends to indicate that the drafters of the code were aware of and intended that knowledge be irrelevant in determining priorities under that section. Under these circumstances this Court feels that the conclusion of the Referee in Bankruptcy that good faith should be read into Minn.Stat.Ann. 336.9–312 (5) is unwarranted.

There are some other practical reasons why this Court feels constrained to reverse the Referee in Bankruptcy. First of all, there are other commentators who have argued that the elimination of the good faith provision was intentional. *See* Felsenfeld, Knowledge as A Factor

in Determining Priorites Under the Uniform Commercial Code, 42 N.Y.U.L.Rev. 246, 248–50 (1967).

Secondly, the assumption of most of the commentators has been that Section 9–312(5) operated without regard to knowledge of the perfecting party of a prior unperfected security interest. *See* Coogan, Hogan, Vagts Secured Transactions Under the U.C.C. 177. The Minnesota Code Comment referring to Section 9–312(5) says:

> "Notice of a prior security interest does not invalidate a subsequent interest which is otherwise entitled to priority under this subsection. * * * This changes prior Minnesota law as to security interests in the nature of chattel mortgages and conditional sales, since subsequent mortgagees under prior law had the burden of proving 'good faith' (i. e., lack of notice) as against prior mortgagees or conditional vendors whose mortgages or conditional sales contracts are unfiled. * * * "

It is clear that the assumption of the Minnesota legislature when they adopted the code was that it changed prior law.

Finally, all the cases which have dealt with the problem indicate by holding or dicta that knowledge is irrelevant to the operation of Section 9–312(5). Bloom v. Hilty, 427 Pa. 463, 234 A.2d 860 (1967); First National Bank and Trust Company of Vinita, Okla. v. Atlas Credit Corp., 417 F.2d 1081, at 1082, fn. 1, 1083 (10th Cir. 1969); In re Gunderson, 4 U.C.C.Rep. 358, 358–59 (D.C.Ill.1967).

The attitude of the commentators and the weight of recorded decisions clearly indicated that knowledge could be disregarded in the operation of Section 9–312(5). The instant situation is evidence that there has been reliance on the apparent meaning of the statute as it has been interpreted by commentators and the courts.

To permit the decision of the Referee in Bankruptcy to stand would be to disrupt substantially expectations under Section 9–312(5). Furthermore, it would create a split in authority and destroy the uniformity the code seeks to achieve. This is not to say that if the current interpretations were clearly contrary to the intent of the drafters that a split in authority would not be appropriate. That, however, is clearly not the situation presented. The only individual who seriously asserts that the elimination of a good faith requirement was unintentional is Professor Gilmore and his position is not an unequivocal one.

Under the circumstances this Court cannot permit to stand a decision which goes against the weight of authority and reasonable expectations under the statute. The decision of the Referee in Bankruptcy must therefore be reversed.