SHERMAN COUNTY BANK, A CORPORATION, APPELLEE, V. FLOYD H. KALLHOFF, APPELLEE, IMPLEADED WITH SANDHILL IMPLEMENT, INC., A CORPORATION, APPELLANT.

288 N. W. 2d 24

Filed January 29, 1980. No. 42466.

John P. Heitz, for appellant.

Shaughnessy, Shaughnessy & Shaughnessy and W. Gerald O'Kief, for appellee Sherman County Bank.

Heard before BOSLAUGH, McCOWN, and CLINTON, JJ., and COLWELL and KELLY, L. W., JR., District Judges.

KELLY, L. W., JR., District Judge.

This is an appeal from the District Court for Custer County, Nebraska. The trial court held that, in a replevin action, the right to possession of certain farm equipment was in the plaintiff. The defendant, Sandhill Implement, Inc., has appealed. We find that the action of the trial court should be reversed and the cause remanded for a new trial.

The question presented in this case is one of determining priority of liens upon the farm equipment involved in this matter under the Uniform Commercial Code. The facts disclosed by the record show that on March 1, 1972, one R. L. Moody executed a security agreement in favor of the plaintiff bank as security for the bank financing of Moody's farming operations. The financing statement perfecting the security interest was filed with the county clerk of Valley County by the bank on March 29, 1972, and subsequently with the county clerk of Custer County. The security agreement contained what is often referred to as an "after acquired property" clause, which granted the bank a security interest in all property subsequently acquired by Moody which involved his farming operation.

On the 15th day of August 1975, R. L. Moody entered into a retail installment contract and security agreement with the implement company. The farm equipment purchased was a power unit, combine, and 4-row corn head. This is the property in which right of possession is in question here. The install-

ment contract and security agreement was a form type of agreement with various blanks filled in. In the body of the form is a statement, "[D]elivery and acceptance of which Buyer hereby acknowledges." The financing statement on the power unit was filed in the clerk's office on the 8th day of September 1975. The financing statement on the combine and corn head was filed on the 9th day of October 1975.

Subsequently Moody experienced financial difficulties and the farm equipment involved herein was sold to the defendant, Floyd Kallhoff. A bill of sale was executed by Moody to Kallhoff on the 4th day of March 1976. On the 6th day of March 1976, Kallhoff entered into a retail installment contract with the implement company for the same described equipment. On the same date Kallhoff also executed a financing statement securing the implement company on the equipment, and the financing statement was filed with the county clerk on March 10, 1976.

The first question to be resolved is, does the implement company have a "purchase money security interest?" Section 9-107, U. C. C., states as follows: "A security interest is a 'purchase money security interest' to the extent that it is (a) taken or retained by the seller of the collateral to secure all or part of its price; or (b) taken by a person who by making advances or incurring an obligation gives value to enable the debtor to acquire rights in or the use of collateral if such value is in fact so used."

The implement company appears to be the seller of the equipment to both Moody and Kallhoff. To such an extent it would appear that the implement company did have a "purchase money security interest" in the property in question.

Section 9-312, U. C. C., sets priorities for conflicting security interests in the same collateral. Subsection (4) of this section reads as follows: "A purchase money security interest in collateral other than inventory has priority over a conflicting secur-

ity interest in the same collateral if the purchase money security interest is perfected at the time the debtor receives possession of the collateral or within ten days thereafter."

The problem in this case arises over the question of fact as to whether or not the implement company perfected its "purchase money security interest" within 10 days of the date of possession of the collateral.

The bank argues that the date of possession was the 15th day of August 1975, for the reason that the purchaser Moody acknowledged delivery on that date by signing the installment sales contract. The District Court so held.

During the trial of this case a witness, who was a representative of the implement company, was asked the following question: "Was the property listed on Exhibit 11 there — was that delivered to Mr. Moody on August 15th, 1975 the date of the agreement?" Objection was made by counsel for the bank on the basis of relevance and this objection was sustained by the trial court. The question was going to the crux of the controversy as to whether or not the implement company had perfected its "purchase money security interest" within 10 days of the date of possession by the purchaser. The question was certainly relevant and the witness should have been permitted to answer.

The relevance as to the date of physical possession has been previously pointed out by this court. The same question was presented to this court in the case of North Platte State Bank v. Production Credit Assn., 189 Neb. 44, 200 N. W. 2d 1, which case neither of the parties has cited in his brief or argument to this court. Our court pointed out the importance of the date of actual physical possession, stating as follows: "This interpretation is well stated in 2 Coogan, Hogan & Vagts, Secured Transactions Under the Uniform Commercial Code, section 19.02 (3) (a),

p. 1979, wherein it is stated: 'The time at which the debtor receives possession *starts the running* of the ten-day grace period for perfection. Problems will undoubtedly arise as to when the debtor "receives possession" of the collateral. The Code does not offer a specific definition of the term, but there are indications that actual delivery to the buyer or to a third party is crucial. *It is important to realize that this priority rule turns on the more easily ascertained time of receipt of possession and not upon the time the debtor obtains "rights" in the collateral.'* (Emphasis supplied.)

"The very purpose of the 10-day grace period was to relieve from the rigidity of a requirement of a loan first and acquisition second or simultaneousness of receipt of possession and execution of the loan. At the same time the integrity of the transaction had to be guaranteed by an ascertainable standard related to the receipt of possession, and the retroactive granting of priority over the first to file and the first to advance funds. See II Gilmore, Security Interests in Personal Property, § 29.2, p. 782."

The bank argues that no offer of proof was made to establish what answer would be given by the witness, and that by virtue thereof and the failure to make the offer of proof, the defendant should be precluded from alleging this issue as error on the part of the trial court. There is no question but what the better trial practice is always to make an offer of proof when evidence is excluded. The question then becomes as to whether or not this is absolutely necessary in order to raise the issue as error in this court.

Section 27-103, R. R. S. 1943, known as Rule 103 under the recently enacted Rules of Evidence which were in effect at the time of this trial, reads as follows: "Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and: * * * (b) In case the ruling is one excluding evidence, the sub-

stance of the evidence was made known to the judge by offer *or was apparent from the context within which questions were asked.*" (Emphasis supplied.) There can be no doubt but what a substantial right of the defendant was affected by the excluding of the evidence which may have tended to show the filing of the purchase money security interest within the 10-day period of time allowed after date of possession. The substance of the evidence was certainly apparent from the context in which the question was asked for the reason that the defendant was attempting to establish the date of physical possession by Moody, under which the defendant claims his priority in the equipment in question.

We therefore conclude that the judgment should be reversed and the cause remanded for a new trial to determine the date of actual physical possession by the original purchaser of the equipment involved in this action.

REVERSED AND REMANDED FOR A NEW TRIAL.