180 N.J. Super. 273 (1981)
434 A.2d 671
LAWRENCE SHALLCROSS, PLAINTIFF,
v.
COMMUNITY STATE BANK AND TRUST COMPANY, A NEW JERSEY BANKING INSTITUTION, DEFENDANT.
Superior Court of New Jersey, Law Division Union County.
Decided April 7, 1981.
*275 Herbert M. Barnes, for plaintiff.
Jeffrey S. Charney, for defendant (Kaplowitz & Wise, attorneys).
LONG, J.S.C.
This case involves a novel issue arising out of a priority dispute between two secured creditors. The facts are as follows:
Plaintiff is Lawrence Shallcross, the president of Shallcross and Pace Sheet Metal Works. In February 1977 Shallcross had a discussion with Raymond Dunphey, president of R. Dunphey Sheet Metal Works, Inc., concerning a Wysong shear owned by Shallcross and an RAS shear owned by Dunphey. According to Shallcross, Dunphey wanted to purchase plaintiff's shear but could not then afford it. It was agreed that Shallcross would deliver the Wysong shear to Dunphey, and if Dunphey paid the purchase price of $13,500 within six months, Shallcross would transfer title to him. It was also agreed that if Dunphey sold its RAS shear within the six-month period, Shallcross was to be paid at that time. Dunphey took possession of the Wysong shear on or about February 25, 1977 and the terms of the above oral agreement were set forth in a letter dated March 4, 1977.
*276 In January 1978 Dunphey sold its RAS shear and Shallcross sought payment for the Wysong shear. In June, 1978, Shallcross and Dunphey renegotiated the price of the Wysong shear downward to $11,250 when Dunphey indicated that only $10,000 had been received for its RAS shear. Dunphey agreed to make monthly payments of $356.95. On June 29, 1978 a bill of sale, promissory note, financing statement and security agreement were signed by plaintiff and Dunphey, and on July 12, 1978 the financing statement was filed. Dunphey made three of the monthly payments and then defaulted.
In the interim, defendant Community State Bank and Trust Company (hereinafter, the bank) entered into a loan transaction and security agreement with Dunphey on June 19, 1978. The Wysong shear was listed as one of the items of collateral for the loan, and the security agreement contained an after-acquired property clause. Pursuant to this agreement the bank loaned Dunphey $50,000 on the date of the agreement and an additional $40,000 on December 15, 1978, in accordance with the provision for future advances. This security agreement was filed on June 23, 1978. Dunphey defaulted in the payment of the loan and the shear was sold by the bank to offset the debt under the terms of this security agreement. When Shallcross attempted to satisfy Dunphey's obligation to him by obtaining possession of the shear, he found that the collateral was no longer available. Shallcross has sued the bank for wrongful conversion of the shear. The bank now moves for summary judgment, claiming that there are no genuine issues of fact and that it clearly had priority in the collateral under the provisions of Article 9 of the Uniform Commercial Code, N.J.S.A. 12A:9-101 et seq.
Article 9 lays out the framework upon which competing security interests can be evaluated and priorities established. In this regard, N.J.S.A. 12A:9-312(5) provides in relevant part that
In all cases not governed by other rules stated in this section (including cases of purchase money security interests which do not qualify for the special priorities set forth in subsections (3) and (4) of this section), priority between conflicting security interests in the same collateral shall be determined as follows: (a) in the *277 order of filing if both are perfected by filing, regardless of which security interest attaches first under 12A:9-204(1) and whether it attaches before or after filing....
Here, it is undisputed that the bank filed first in time and therefore perfected its security interest prior to Shallcross. Shallcross maintains that this provision does not establish the relative positions of the parties, for several reasons which will be discussed serially.
First, Shallcross argues that he retained title to the shear and that that fact rendered the "first in time" provision of Article 9 inapplicable. However, N.J.S.A. 12A:9-202 provides clearly and unequivocally that
Each provision of this Chapter with regard to rights, obligations and remedies applies whether title to collateral is in the secured party or in the debtor.
On its face, then, N.J.S.A. 12A:9-312(5) applies to this transaction and the retention of title device is not sufficient to defeat a security interest perfected prior to the transfer of title. Brandywine Lanes, Inc. v. Pittsburgh Nat'l. Bank, 437 Pa. 499, 261 A.2d 330 (Sup.Ct. 1970); see George W. Ultch Lumber Co. v. Hall Plastering, Inc., 477 F. Supp. 1060 (W.D.Mo. 1979).
Nor can Shallcross rely on the rules governing purchase money security interests in order to defeat the bank's claim. A purchase money security interest is, in essence, a conditional sale in which the seller retains an interest in the collateral to secure payment of the purchase price. The rule as to priorities in the face of a purchase money security interest is divided into two categories: that governing inventory collateral and that governing interests in collateral other than inventory. Under neither of these provisions can Shallcross succeed in his claim. In this respect, N.J.S.A. 12A:9-312(3) provides that
A purchase money security interest in inventory collateral has priority over a conflicting security interest in the same collateral if (a) the purchase money security interest is perfected at the time the debtor receives possession of the collateral; and (b) any secured party whose security interest is known to the holder of the purchase money security interest or who, prior to the date of the filing made by the holder of the purchase money security interest, had filed a financing statement covering the same items or type of inventory, has received notification of the purchase money security interest before the debtor receives *278 possession of the collateral covered by the purchase money security interest; and (c) such notification states that the person giving the notice has or expects to acquire a purchase money security interest in the inventory of the debtor, describing such inventory by item or type.
N.J.S.A. 12:9-312(4) goes on to provide in the case of noninventory collateral that
A purchase money security interest in collateral other than inventory has priority over a conflicting security interest in the same collateral if the purchase money security interest is perfected at the time the debtor receives possession of the collateral or within ten days thereafter.
So that whether the collateral is viewed as inventory or otherwise, since Shallcross did not perfect at the time Dunphey received possession of the collateral or within ten days thereof, the special priority afforded a purchase money security interest is unavailable to him. The time restrictions in the code in this connection have been strictly adhered to by the courts and to hold otherwise would render them meaningless. Sherman Cty. Bank v. Kallhoff, 205 Neb. 392, 288 N.W.2d 24 (Sup.Ct. 1980); North Platte State Bank v. Production Credit Ass'n, 189 Neb. 44, 200 N.W.2d 1 (Sup.Ct. 1972); National Cash Register Co. v. Mishkin's 125th Street, Inc., 65 Misc.2d 386, 317 N.Y.S.2d 436 (Sup.Ct. 1970). It should be noted in this regard that Shallcross has also suggested that Dunphey should not be considered to have "received possession" of the collateral within the meaning of N.J.S.A. 12A:9-312 until the bill of sale was executed. There is no authority for this view. But even assuming for the purpose of this argument that there were, since Shallcross did not even perfect at the time of the execution of the bill of sale or within ten days thereof, the special priority would not be available to him in any event.
Shallcross must therefore proceed under the general priority rules of N.J.S.A. 12A:9-312(5). As has previously been noted, that statute clearly provides that the priority is to be determined by the order of filing when both security interests are perfected by filing. In order to avoid the effect of the statute, Shallcross has suggested that the bank's knowledge of his prior interest in the collateral prevents the bank from obtaining a *279 priority. Factually, Shallcross asserts that the bank knew of his interest in the shear before it loaned Dunphey the money and accordingly took the shear as collateral subject to his interest. In support of this position, Shallcross claims that he was present in Dunphey's shop when a representative of the bank came to inspect the shop and equipment, and that he personally heard Dunphey inform the representative that he still owed Shallcross money on the shear.
Although no New Jersey court has yet to pass on this issue, a review of the statute, decisions from other jurisdictions and the Official Code Comments adopted by the New Jersey Study Commission leads to the conclusion that knowledge of a prior interest does not affect the priority provisions of the act.
First, it should be noted that there is no suggestion in the language of N.J.S.A. 12A:9-312(5) that knowledge or notice of a prior interest is a bar to the invocation of the priorities established therein. The absence of a notice provision in this section of the act is particularly significant since the drafters of the act saw fit to specifically include knowledge or notice provisions in other sections of it. One such example is N.J.S.A. 12A:9-301(1)(a), dealing with the priority between an unperfected security interest and a lien creditor.
Except as otherwise provided in subsection (2), an unperfected security interest is subordinate to the rights of ... (b) a person who becomes a lien creditor without knowledge of the security interest and before it is perfected. [N.J.S.A. 12A:9-301.]
Obviously, the drafters contemplated that, in certain cases, knowledge of another interest would bar the subsequent interest from obtaining priority. Had they intended that this be an element of N.J.S.A. 12A:9-312(5), they would have specifically provided so. Even in N.J.S.A. 12:9-312(3), which governs a purchase money security interest in inventory collateral, there is a notice provision. There is, however, no such provision in clause (5). Hence, it seemed clear that the failure to set forth a "knowledge" or "notice" provision in 9-312(5) was intentional and that such a provision is not to be implied. This conclusion is *280 consistent with the weight of decisional authority. First Nat'l Bank and Trust Co. v. Atlas Credit Corp., 417 F.2d 1081 (10 Cir.1969); In re Smith, 326 F. Supp. 1311 (D.Minn. 1971); National Bank of Sarasota v. Dugger, 335 So.2d 859 (Fla.App. 1976); Madison Nat'l Bank v. Newrath, 261 Md. 321, 275 A.2d 495 (Ct.App. 1971); Bloom v. Hilty, 427 Pa. 463, 234 A.2d 860 (Sup. Ct. 1967); Noble Co. v. Mack Financial Corp., 107 R.I. 12, 264 A.2d 325 (Sup.Ct. 1970).
The leading out-of-state case on the subject is In re Smith, supra, where the court discussed these issues at length. There, Smith purchased an automobile, and a conditional sales contract was executed by the dealer and subsequently assigned to the First National Bank of Minneapolis. No financing statement was filed. A few months later Community Credit Co. lent Smith money and Smith executed a chattel mortgage on the automobile and a financing statement was filed. Community Credit Corp. had actual knowledge of the unperfected security interest held by First National in the automobile. Id. at 1312. The court concluded that prior knowledge was irrelevant for several reasons equally applicable here. First, the court discussed the integrity of the filing system, a point raised by Professor Gillmore in his treatise, Security Interests in Personal Property, § 34.2 (1965). The court commented:
It is desirable that perfection of interests take place promptly. It is appropriate then to provide that a secured party who fails to file runs the risk of subordination to a later but more diligent party. In this regard it should be pointed out that filing is of particular importance with respect to notice to other parties. It is agreed that where the later party has actual notice there is no need to rely upon a filing to notify him of a prior interest. The problem, however, cannot be analyzed in this narrow context. Some parties may rely on the record in extending credit and obtaining a security agreement in collateral. Although they will prevail over the unperfected prior interest in time if a dispute arises, it is entirely possible that they wanted to avoid the dispute altogether. In other words, they may not have relied in ultimately prevailing in the event of a dispute but they may have relied on the complete absence of a prior interest perfected or otherwise out of which a dispute could arise. The only way this kind of record expectation can be protected is by prompt, perfection of all security interests. [326 F. Supp. at 1313-1314].
*281 In conjunction with this, the Smith court also recognized the evidentiary problems created by a knowledge requirement, which is subjective and is much more difficult to establish than an objective criterion such as the date of filing. Id. at 1314. Finally, the court in Smith analyzed the Official Comments accompanying the Code and determined that they supported the view that knowledge is not an element for consideration in this connection.
The official comments to § 9-312 contain several examples which illustrate the resolution of priority disputes under clause (5). These examples, adopted by the New Jersey Study Commission in its comment to the section, comport with the conclusion in Smith. Example 2 is perhaps closest in point.
A & B non-purchase money advances against the same collateral. The collateral is in the debtor's possession and neither interest is perfected when the second advance is made. Whichever secured party first perfects his interest (by taking possession of the collateral or by filing) takes priority and it makes no difference whether he knows of the other interests at the time he perfects his own. [Emphasis supplied]
The language of this example is clear  it makes no difference whether the secured party knows of the other's interest at the time he perfects his own. The point of the example and the statutory scheme itself is to encourage the prompt perfection of security interests as an unequivocal method of establishing priorities with certainty and without opening the flood gates of litigation, no more or no less.
Nothing in this interpretation can be considered to controvert the good faith requirement of N.J.S.A. 12A:1-203. For this record is devoid of any evidence to show a leading on, bad faith or inequitable conduct on the part of the bank which would justify what in essence is estoppel against the assertion of a priority. This is not to say that the priorities established under N.J.S.A. 12A:9-312(5) would never be affected by a showing of bad faith. That is simply not the question presented here.
For the foregoing reasons the motion for summary judgment is hereby granted.