Virginia Blanche HUTCHISON,. Administratrix of the Estate of R.H. Kelly, Deceased, Plaintiff,

v.

C.I.T. CORPORATION and C.I.T. Leasing Corporation, Defendants.

No. C 79–0143–L(B).

United States District Court, W.D. Kentucky, Louisville Division.

May 13, 1982.

John D. Marshall, Atlanta, Ga., Hal Bogard, Louisville, Ky., for plaintiff.

Richard W. Iler, Louisville, Ky., for defendants.

## MEMORANDUM CONTAINING FINDINGS OF FACT AND CONCLUSIONS OF LAW

BALLANTINE, District Judge.

The convoluted factual situation in this case presents a relatively simple issue for resolution. The issue presented is a determination of the priority of security interests between plaintiff and defendants.

Frederick & Kelly, Inc. was a strip mining company owned by R.H. Kelly and Titus Frederick. Frederick & Kelly, Inc. and Frederick, individually, owned 55 pieces of mining equipment, including two loaders identified as a Michigan 675 and a Hough 400.

On April 12, 1976, Kelly gave Frederick an option to purchase Kelly's interest in Frederick & Kelly, Inc. and equipment owned by Kelly, individually. The purchase price was to be $1,500,000.00.

A company known as Herco purchased 9 of the 55 pieces of equipment and resold them to Rifle Coal, Big Fork Mining and an individual named Jerry Dorminey. Herco took 9 separate security agreements from the purchasers.

On July 2, 1976, there was a sale by Kelly to Frederick. Frederick paid Kelly $357,000.00.

Defendant CIT Corporation purchased the security agreements from Herco and gave 9 separate checks to Herco, which then endorsed them to Kelly. The total amount of the checks was $793,000.00.

The remaining $350,000.00 was paid to Kelly by a promissory note from Herco and Aggregate Transport, Inc. The note was secured by a security agreement from Herco and Aggregate Transport to Kelly. The security agreement granted Kelly a secured interest in the Michigan 675 and the Hough 400. The Michigan 675 and the Hough 400 were conveyed to Herco and Aggregate Transport by Kelly and Frederick & Kelly, Inc.

At the time of the sale of the Michigan 675 and the Hough 400 they were located on the Four Seam property of Falcon Coal in Perry County, Kentucky. Frederick & Kelly, Inc. had a lease from Falcon by which it was to mine the Four Seam property but it was not actively mining it. The property was used primarily to store equipment, including the Michigan 675 and the Hough 400. As a favor to Kelly, Falcon's nightwatchman, a man named Watkins, kept an eye on the equipment.

Kelly died in October, 1976, and plaintiff qualified as his administratrix.

The security agreement between Herco and Aggregate Transport on the one hand, and Kelly on the other hand, was not filed and on August 18, 1977, an unsigned financing statement was filed in Georgia and on August 8, 1977, an unsigned photocopy of the financing statement was filed in Perry County, Kentucky.

On September 7, 1977, CIT removed the Michigan 675 from the Falcon Coal property and on September 2, 1977, CIT repossessed the Hough 400.

On November 18, 1976, Herco executed a bill of sale conveying the Michigan 675 to CIT Leasing for $275,000.00. CIT Leasing issued a check in that amount to Herco.

On November 12, 1976, CIT leased the Michigan 675 to Dorminey for something over $9,000.00 per month for 36 months and granted Dorminey an option to purchase the equipment at the end of the lease for $1.00. Financing statements were filed in the Georgia county of Dorminey's residence and in Pike County, Kentucky, where Dorminey operated a business. After Dorminey defaulted, CIT Leasing sold the Michigan 675 to some people named Bruce for $400,000.00.

On October 4, 1976, Herco assigned a security agreement between Dorminey as debtor and Herco as the secured party to CIT. The security agreement conveyed the Hough 400. The financing statement covering the Hough 400 was filed in Pike County, Kentucky.

In December, 1978, CIT sold the Hough 400 at auction for $25,000.00.

Herco and Aggregate Transport thereafter defaulted on the note to Kelly and this action was commenced seeking a declaration of rights as between Kelly's administratrix and the defendants, CIT Corporation and CIT Leasing Corporation.

No serious argument is made by plaintiff that CIT does not have a perfected security interest in the two pieces of equipment. Plaintiff asserts her priority by reason of what she argues was Kelly's possession of the collateral.

Since defendants do business in this district, venue is properly laid here. Title 28 U.S.C. Section 1391(c). The Court also has jurisdiction of the parties and the subject matter. Title 28 U.S.C. Sections 1332 and 2201.

KRS 355.9–402(1) provides in substance that a financing statement is sufficient if it is signed by the debtor and a secured party. Since the financing statement and the photocopy thereof between Herco and Aggregate Transport on the one hand, and Kelly on the other hand, were unsigned, they are of no effect.

Plaintiff argues that Kelly was in possession of the collateral and therefore comes within the exception to recording of the financing statement.

■ KRS 355.9–302(1)(a) provides in substance that a financing statement must be filed to perfect all security interests except a security interest in collateral in possession of the secured party.

■ Possession is a course of conduct, not an act, *United States v. Jones*, 533 F.2d 1387, 1391 (6th Cir.1976), and possession sufficient to dispense with the recording requirement must be unequivocal, absolute and notorious. *Transport Equipment Co. v. Guaranty State Bank*, 518 F.2d 377, 381 (10th Cir.1975). The actions of Watkins in looking after the equipment for Kelly are insufficient to provide notice to CIT and there simply is no evidence that Kelly ever exercised dominion or control over the equipment while it was on Falcon's property.

■ If Falcon Coal were a bailee of the equipment, the saving provisions of KRS 355.9–305 are nevertheless unavailable to plaintiff since Kelly did not notify Falcon of his interest.[1]

Plaintiff also advances the argument that at the time Herco transferred the Michigan 675 to CIT, CIT was on notice of Kelly's security interest. This argument rests on the fact that CIT's agent, Bartholomew, was present at the transaction among Frederick, Kelly and Herco, at which time Bartholomew delivered the 9 checks to Herco and received the security interests in the 9 pieces of equipment.

The weakness of this argument lies in the fact that the Michigan 675 and the Hough 400 were not among the 9 pieces of equipment transferred and the Court is unwilling to adopt plaintiff's characterization of Bartholomew as deaf, dumb and blind.

■ CIT had had previous dealing with Herco which apparently was an established dealer in mining equipment. Herco represented to CIT that the Michigan 675 was free and clear of all encumbrances. Assuming arguendo that CIT, through Bartholomew, had notice of Kelly's unrecorded security interest, the Court concludes that the provisions of KRS 355.9–312(5)(a) and (b)[2] compel a finding that CIT's recorded security interest is superior to Kelly's unrecorded security interest. As was written in *In re Smith*, 326 F.Supp. 1311 (D.Minn. 1971):

"This provision nowhere makes lack of knowledge (good faith) a requirement for obtaining priority. The statute on its face provides for a race to the filing office with actual knowledge of a prior unperfected security interest apparently being irrelevant if one perfects first by filing.

\*　　\*　　\*　　\*　　\*　　\*

It is true that Professor Gilmore suggested implying a good cause provision as one way of approaching Section 9–312(5). To the contrary he also pointed out that there were some good reasons

---

1. We note that plaintiff has abandoned any argument that a bailment existed between Kelly and Falcon. See page 1 of plaintiff's response to defendant's brief.

2. (5) In all cases not governed by other rules stated in this section (including cases of purchase money security interests which do not qualify for the special priorities set forth in subsections (3) and (4) of this section), priority between conflicting security interests in the same collateral shall be determined as follows:

"(a) in the order of filing if both are perfected by filing, regardless of which security interest attached first under subsection (1) of KRS 355.-9–204 and whether it attached before or after filing;

(b) in the order of perfection unless both are perfected by filing, regardless of which security interest attached first under subsection (1) of KRS 355.9–204 and, in the case of a filed security interest, whether it attached before or after filing ...."

**4**

for disregarding knowledge and creating a race to file situation. One is the protection of the integrity of the filing system. *Gilmore,* pp. 901–902. It is desirable that perfection of interests take place promptly. It is appropriate then to provide that a secured party who fails to file runs the risk of subordination to a later but more diligent party.

CIT's knowledge of Kelly's security interest is of no comfort to plaintiff in light of the statute and the language of *In re Smith.*

One further point militates against plaintiff's claim that Kelly was in possession of the equipment. The security agreement between Kelly as the secured party and Herco and Aggregate Transport as debtors, provides in part that upon default Kelly had the right to enter upon any premises to take possession of the collateral. The agreement further provided that Herco and Aggregate Transport would maintain the collateral in good condition at all times. We believe that this language clearly demonstrates that Kelly intended to surrender possession of the collateral to Herco and Aggregate Transport.

### CONCLUSION

The Court has considered the record and memoranda filed by counsel and concludes that judgment should be entered declaring that defendant, CIT Corporation, has a security interest in the Hough 400 prior and superior to the unperfected security interest claimed by plaintiff and that defendant CIT Leasing Corporation has purchased the Michigan 675 free of plaintiff's unperfected security interest. An appropriate Judgment will be entered.

### JUDGMENT

The Court declares the rights of the parties and orders and adjudges as follows:

1. Defendant, CIT Leasing Corporation, purchased the Michigan 675 as a buyer in the ordinary course of business, free of Plaintiff's unperfected security interest, and thus Plaintiff has no interest in the Michigan 675 or the proceeds of its sale by CIT.

2. Irrespective of CIT Leasing Corporation's status as a purchaser in the ordinary course of business of the Michigan 675, CIT Leasing Corporation would have a security interest in the Michigan 675 and the proceeds of its sale prior and superior to Plaintiff's unperfected security interest.

3. Defendant, CIT Corporation, has a security interest in the Hough 400, and the proceeds of its sale, prior and superior to Plaintiff's unperfected security interest.

4. Plaintiff shall take nothing by its Complaint, and it is dismissed with prejudice.

5. Defendants shall recover from Plaintiff their costs herein incurred.