**In re Ronald Leo IVY, Lynnette Lorraine Ivy, Debtors.**

**UNITED STATES of America, Plaintiff,**

**v.**

**Jerry TRUITT, Trustee, Ronald L. Ivy and Lynnette L. Ivy, Defendants.**

No. 81–00076.
Adv. No. 81–0077.

United States Bankruptcy Court,
E.D. Kentucky,
Lexington Division.

Nov. 3, 1983.

Marilyn S. Daniel, Asst. U.S. Atty., Lexington, Ky., for United States of America.

George D. Smith, Odell & Howard, Lexington, Ky., for J.I. Case Credit Corporation.

J. James Rogan, Rogan & Hibberd, P.S.C., Danville, Ky., for Ronald Leo Ivy and Lynette Lorraine Ivy.

James W. Williams, III, Stanford, Ky., for Creditors' Committee.

## MEMORANDUM OPINION

JOE LEE, Bankruptcy Judge.

The complaint initiating this action is a request for relief from the automatic stay pursuant to 11 U.S.C. § 362. After the filing of this action, the assets in question were sold by agreement of the parties, upon order of the court.

This case is now before the court on the motion of the plaintiff for determination of priorities and distribution of funds. In order to make such determination, the court must resolve the issue of whether J.I. Case Credit Corporation perfected its purchase-money security interest in certain collateral within ten days after the debtors received possession of that collateral as required by the version of KRS 355.9–312(4) in effect at the time in question. The resolution of this issue depends on the meaning of the words "receives possession" for the purposes of said subsection. The plaintiff asserts that, on the facts of this case, the debtor, Ronald L. Ivy, received possession of a Case tractor the day he signed a contract granting Triplett's Farm Service, Inc. of Danville, Kentucky a security interest in said tractor. J.I. Case Credit Corporation, the assignee of Triplett's right to payment under said security agreement, asserts the debtor received possession of the tractor the day the tractor was physically delivered by Triplett's Farm Service to the debtor's farm.

FINDINGS OF FACT:

The debtor, Ronald Ivy, purchased several pieces of farming equipment from Triplett's Farm Service, Inc. (Triplett) under a retail installment sales contract dated November 19, 1979. Said creditor perfected by filing and assigned its right to payment to J.I. Case Credit Corporation (Case) November 29, 1979. (See Proof of Claim No. 5.) No proof was offered that a termination statement as such was filed with respect to this contract. (See TR 23–24.)

In December, 1979, the debtors received three loans from the plaintiff acting through Farmers Home Administration, United States Department of Agriculture. As security for these loans, the debtor, Ronald Ivy, executed and delivered a security agreement on all crops produced on certain enumerated farms and certain enumerated chattels, including the above mentioned farming equipment purchased from Triplett, and all after acquired property. This agreement was perfected by the filing of a

financing statement December 20, 1979. (See Exhibits "A", "B", "C", "E" and "F" attached to the complaint herein.)

Subsequently, a 530 Case tractor which was one of the pieces of farming equipment purchased by the debtor from Triplett in November, 1979 failed to give good service. Triplett loaned the debtor a tractor to use while the 530 Case tractor was being repaired. (See TR 11.) The debtor eventually traded in to Triplett the 530 Case tractor on a new 990 Case tractor. (See TR 12.) The retail installment contract (security agreement) was signed by the debtor May 15, 1980. (See TR 12 and Proof of Claim No. 5.) Triplett picked up from the debtor's farm the tractor previously loaned to the debtor and actually physically delivered to the debtor's farm the 990 Case tractor on May 19, 1980. (See TR 14–15, 18–19 and Delivery and Pickup Order.) Triplett filed the security agreement and assigned its right to payment to Case May 29, 1980. (See Proof of Claim No. 5.)

Real and personal property of the debtor, including the above discussed farming equipment which was purchased from Triplett, was sold at public auction April 25, 1981. The equipment which was purchased from Triplett and in which J.I. Case claims an interest was sold for a total of $11,-530.00. The auctioneer charged a four percent commission at the time the sale was conducted. This fee was paid out of the total recovery. A sales fee of $461.20 is attributable to the sale of the items in which Case claims an interest. Further, $55.79 was spent to repair a tractor tire in order to prepare the tractor for sale. This repair fee was also paid out of the total recovery. (See Report of Sale at Public Auction and Exhibit B attached thereto, filed May 19, 1981, and TR 30–31.)

CONCLUSIONS OF LAW:

The court has jurisdiction of the parties and of the subject matter of this action.

The primary issue before the court is whether the seller, Triplett, and thereafter its assignee, Case, perfected its security interest within the ten-day grace period provided for by KRS 355.9–312(4), which ten-

day period runs from the date the purchaser/debtor received possession of the 990 Case tractor.

Farmers Home Administration, which has a security interest in the equipment in question, claims priority in the proceeds from the sale of the 990 Case tractor on the ground that Triplett did not perfect its purchase-money security interest within the ten-day grace period following the day on which the debtor received possession of said tractor. The determination of this issue turns on the meaning of the term "possession" for the purposes of KRS 355.9–312(4).

The version of KRS 355.9–312(4) in effect at the time in question states as follows:

(4) A purchase money security interest in collateral other than inventory has priority over a conflicting security interest in the same collateral if the purchase money security interest is perfected at the time the debtor receives possession of the collateral or within ten days thereafter.

■ The Uniform Commercial Code does not contain a definition of the term "possession" or "receives possession." However, there is strong support for the proposition that the term "possession" refers to actual, physical possession as opposed to constructive possession.

In *In re Automated Bookbinding Services, Inc.*, 471 F.2d 546 (4th Cir.1972), the United States Court of Appeals for the Fourth Circuit held that, within the meaning of section 9–312(4) of the Uniform Commercial Code, a debtor received possession of goods the day it received physical possession of the goods. In its discussion of possession under Article 9 of the Uniform Commercial Code, *Id.* at 551–553, the court stated:

"Possession" is one of the few terms employed by the Code for which it provides no definition. The Code's general purpose is to create a precise guide for commercial transactions under which businessmen may predict with confidence the results of their dealings. In defining "possession" we must be guided by these

considerations as well as by the underlying theories unique to Article 9.

Under pre-code law, a security interest became invalid if the debtor was allowed uncontrolled dominion over the collateral. Exercise of such ostensible ownership could perpetrate fraud on potential creditors who, not being able to know of the creditor's security interest, would think the collateral belonged to the debtor.

In contrast, creditors today can learn of pre-existing security interests through the filing provisions of the Code and a debtor's use of the collateral is no longer considered fraudulent, § 9–205. Filing is required, with certain exceptions, to perfect the security interest, so that creditors may learn of the pre-existing interest. "Possession" is used throughout Article 9 in establishing the filing scheme, in permitting debtors to retain use of collateral, and in providing perfection through means other than filing, such as through the secured party's taking possession. The ostensible ownership exercised through possession is demonstrated through simple physical control. One who controls the collateral possesses it, and leads others to believe it is his. Gilmore, a draftsman of Article 9, explains:

> "Receives possession" is evidently meant to refer to the moment when the goods are physically delivered at the debtor's place of business—not to the possibility of the debtor's acquiring rights in the goods at an earlier point by identification or appropriation to the contract or by shipment under a term under which the debtor bears the risk.

2 Gilmore, Security Interests in Personal Property 787 (1965).

Pre-code security law defined possession as meaning physical control.

Tender of delivery is a sales concept, employed by Article 2, which binds a buyer and seller to contractual conditions. It affects their rights against each other. It would be a serious error to allow those private conditions to affect the carefully defined rights of creditors under Article 9.

Secured parties are required, in most cases, to file a financing statement in order to perfect their security interest. To define "possession" as requiring completion of tender of delivery terms would permit a secured creditor to delay performance of a tender of delivery term, and thereby avoid the filing requirement indefinitely. Even if a debtor would have use of the collateral he would not be deemed to have "possession," under the District Court's analysis, and purchase money security interest holders filing after complying with a tender of delivery term, at any future date, would still be entitled to the § 9–312(4) priority. Such a result would frustrate the purpose of Article 9 and could not have been intended by the drafters.

To summarize, possession under § 9–312(4) is not dependent upon completion of tender of delivery terms which affect only the buyer and seller of the goods. Since the last of the binder parts were delivered to the bankrupt, in their crates, on June 2, possession of the collateral was received on that date. . . . (footnotes omitted)

In *Sherman County Bank v. Kallhoff,* 205 Neb. 392, 288 N.W.2d 24, 27 (1980), the Supreme Court of Nebraska was faced with the question of whether a creditor perfected its purchase-money security interest in farm equipment within ten days of the date of the debtor's possession of the collateral within the meaning of section 9–312(4) of the Uniform Commercial Code. Another creditor argued that the date of possession was the day the purchaser acknowledged delivery by signing the installment sales contract. The district court so held. The supreme court reversed the judgment of the district court and remanded the cause for a new trial to determine the date of actual physical possession by the original purchaser of the equipment. The court stated:

> The relevance as to the date of physical possession has been previously pointed out by this court. . . . Our court pointed out the importance of the date of actual physical possession, stating as follows:

"This interpretation is well stated in 2 Coogan, Hogan & Vagts, Secured Transactions Under the Uniform Commercial Code, section 19.02(3)(a), p. 1979, wherein it is stated: 'The time at which the debtor receives possession starts the running of the ten-day grace period for perfection. Problems will undoubtedly arise as to when the debtor "receives possession" of the collateral. The Code does not offer a specific definition of the term, but there are indications that actual delivery to the buyer or to a third party is crucial. *It is important to realize that this priority rule turns on the more easily ascertained time of receipt of possession and not upon the time the debtor obtains "rights" in the collateral.'* (Emphasis is supplied.)

"The very purpose of the 10-day grace period was to relieve from the rigidity of a requirement of a loan first and acquisition second or simultaneousness of receipt of possession and execution of the loan. At the same time the integrity of the transaction had to be guaranteed by an ascertainable standard related to the receipt of possession, and the retroactive granting of priority over the first to file and the first to advance funds. See II Gilmore, Security Interests in Personal Property, s. 29.2, p. 782."

Additional support for the proposition that the term "possession" as used in KRS 355.9–312(4) refers to actual, physical possession is found in White and Summers, *Handbook of the Law Under the Uniform Commercial Code* (1972), which states at 919:

In 1958 however, a new Board reinserted the ten day period for the purchase money security interest in collateral other than inventory. The Board believed that "the change ... conforms to the business practice of filing after delivery in cases of purchase money security interests in collateral other than inventory." This ten day time period parallels a similar time for perfection in 9–301(2). Thus 9–312(4) and 9–301(2) combine to assure the pur-

chase money lender (secured by collateral other than inventory) who files within ten days of debtor's receipt of the collateral a priority over those with conflicting security interests, and over lien creditors. (footnotes omitted)

Further support is found in Henson, *Handbook on Secured Transactions Under the Uniform Commercial Code* (2d ed. 1979), which states at 127–28:

If the security interest in equipment is a purchase money interest, Section 9–312(4) gives a ten-day grace period for perfection, which normally will be by filing, after the debtor receives possession of the goods, and if the security interest is perfected within this time it will have priority over any conflicting security interests whether arising through after-acquired property clauses in earlier transactions or by non-purchase money filing during this time. Revised Section 9–312(4) gives this same priority to proceeds of the equipment too.

If a seller or a third party advancing the funds for the purchase of goods fails to file *within ten days after the debtor receives the goods,* the purchase money priority is lost ... (emphasis added)

Henson also states at 127 n. 35, which accompanies the above quoted text, "Receives possession" is not directly defined but "receipt" of goods is defined in § 2–103(1)(c) as taking physical possession of them..."

See KRS 355.2–103(1)(c), which states, "(c) "Receipt" of goods means taking physical possession of them."

█ Based on the above discussed authorities and reasoning, the court finds that for the purposes of KRS 355.9–312(4) the debtor received possession of the 990 Case tractor May 19, 1980, the day the tractor was actually, physically delivered to the debtor's farm.[1] The court further finds that the purchase-money security interest in said tractor was perfected within the

---

1. A seller has a possessory security interest so long as items previously sold remain in the physical possession of the seller and, therefore,

does not need the protection provided by the ten-day grace period until the seller relinquishes physical possession.

ten-day grace period as required by KRS 355.9–312(4).

The plaintiff asserts that it has a prior interest in farm equipment purchased by the debtor from Triplett under the retail sales contract dated November 19, 1979 and filed November 29, 1979 on the ground that the filing on May 29, 1980 of the security agreement dated May 15, 1980 acted as a release of the equipment purchased in 1979 because the later agreement refers only to the 990 Case tractor and the other equipment is not listed on the new security agreement. Case asserts both liens are still in effect. No termination statement has been filed. Both contracts state that the seller retains a security interest until all obligations of the purchaser are paid in full and discharged. (See TR 23–25 and Proof of Claim No. 5.)

The court finds that Case has a perfected purchase-money lien in the farming equipment described in the above discussed contract dated November 19, 1979 and filed November 29, 1979.

The court finds that the perfected purchase-money security interest of Case in all of the above discussed farming equipment which the debtor purchased from Triplett is prior to the interest of the plaintiff in the same collateral. The court further finds that Case is entitled to $11,530.00, the proceeds of the sale of said farming equipment, less $461.20, the sales fee attributable to the sale of said equipment, and $55.79, the cost of repair of a tractor tire in preparation for the sale.