## Richmond

PAUL M. PENICK, EXECUTOR, ETC., ET AL.

V.

HENRY J. DEKKER, ET AL.

Record No. 820300.

September 7, 1984.

Present: All the Justices.

*Bevin R. Alexander, Jr. (Bernard C. Baldwin, III; Edward S. Graves; Edmunds, Williams, Robertson, Sackett, Baldwin & Graves*, on briefs), for appellants.

*R. David Barbe (David O. Williamson; Gardner, Moss, Brown & Rocovich, P.C.*, on brief), for appellees.

STEPHENSON, J., delivered the opinion of the Court.

Paul M. Penick, Executor of the Estate of Walter S. Newman, Jr., and Barbara N. Newman (collectively, the Newmans) filed a bill of complaint for a declaratory judgment against Henry and Louisa Dekker. The Newmans alleged the existence of an agreement settling controversies which arose between the parties respecting the will of LizOtey Hoge Newman. The Dekkers filed a demurrer which the trial court sustained on the grounds that the bill of complaint "shows on its face that no agreement was reached by the parties" and "if an agreement had been reached it would be unenforceable." The Newmans appeal.

A writing purporting to be the last will of LizOtey Hoge Newman was admitted to probate on May 6, 1980. Questions arose between the parties as to the proper construction of the document, whether the testatrix executed it under undue influence, and whether she had mental capacity to execute a will.

The Newmans allege that the parties reached a settlement agreement regarding the division of the estate whereby the Dekkers agreed to pay the Newmans $100,000 in exchange for the Newmans' release of any further claims against the estate and the Dekkers. The Newmans claim the agreement is evidenced by three letters as well as the drafts of contracts signed by the parties, all of which were attached to the Newmans' bill of complaint as exhibits.

The first letter, from the Dekkers to the Newmans, contained the Dekkers' offer to pay the Newmans $100,000 in 50 monthly installments of $2,000 each. In turn, the Newmans were to execute a release "which would become effective upon completion" of the payments and would relinquish any further claims which the Newmans had against the estate and the Dekkers. The letter further provided that in the event of Henry's incapacity to work or his death before all cash payments were made, Louisa would be allowed "60 to 90 days to make the necessary arrangements to continue the payments . . . or to revert to an offer of property in settlement of the unpaid portion."

In the second letter, the Newmans accepted the Dekkers' offer of payment, agreed to sign the release after all payments were made, and anticipated an agreement to be prepared by the Dekkers' attorney. The Newmans requested that the agreement provide that "in the event of [Henry's] death or disability . . . the

payments would revert to an offer of property in settlement," which "would be no other than [the testatrix's] 5/18 acres of the 14.2 acres called the Black Farm."

Thereupon, the Dekkers wrote to their attorney and informed him that these two letters "represent an agreement between the two parties." They asked the attorney to prepare the "necessary documents to implement this agreement." This letter also stated that the Dekkers needed "a clause which permits Louisa, in case of [Henry's] death or inability to work, to have 60 to 90 days grace to make other arrangements."

Thereafter, the Dekkers' attorney prepared an agreement and a nonnegotiable promissory note, a copy of which was attached to the agreement. In their bill of complaint, the Newmans allege that the Dekkers signed the agreement and sent it, with a $2,000 check in payment of the first installment, to the Newmans for their signatures. The agreement provided in pertinent part as follows:

> WHEREAS, the parties hereto have reached a settlement of this matter.
>
> Therefore, that for and in consideration of the promise to pay the sum of One Hundred Thousand ($100,000.00) Dollars by a note, a copy of which is attached hereto, the [Newmans] do hereby release and waive forever any and all claims against, or challenges and contests to, any matter whatsoever arising from the provisions of, and specifically the scheme of distribution of, the last will and testament of Liz Otey Hoge Newman executed June 29, 1979. The [Newmans] do further hereby covenant not to bring or to be party to any action at law or in equity against the estate of Liz Otey Hoge Newman, or against any personal representative thereof, or against any beneficiary thereunder.

The nonnegotiable note contained the Dekkers' promise to pay the Newmans $100,000, without interest, in 50 monthly installments of $2,000 each. The note also contained the following provision:

> In the event Maker Henry J. Dekker shall, during the term of this indebtedness, die or become disabled so that he is unable to engage in gainful employment in a profession similar in all respects to the one he is now engaged in, then

in such event, Henry J. Dekker or his estate shall have a grace period of ninety (90) days, commencing the date the monthly installment payment is due following the date of Henry J. Dekker's death or disability. During this grace period, if no monthly payments are made, no default shall be deemed to have occurred hereunder, provided upon the expiration of said ninety (90) day grace period the Payees herein are paid such sums required to bring payment on this indebtedness current to that date, according to the regular anticipated schedule of payments as required herein, and thereupon the resumption of regular monthly payments as required herein.

Upon receipt of these documents, the Newmans accepted "the substantive provisions" thereof, but rewrote the agreement "to correct certain clerical errors" contained therein. The Newmans signed the corrected agreement and accepted the note as submitted. The pertinent portion of the rewritten agreement provides:

WHEREAS, the parties hereto have reached a settlement of this matter *by evaluating the benefits for Walter S. Newman, Jr. under Clause III, par. 3, of said will at One Hundred Thousand Dollars ($100,000.00).*
Therefore, that for and in consideration of the promise to pay the sum of One Hundred Thousand Dollars ($100,000.00) by a note, a copy of which is attached hereto, the [Newmans] do hereby *accept said sum in full discharge of said benefits under par. 3* and release and waive forever any and all claims against, or challenges and contests to, any matter whatsoever arising from the provisions of, and specifically the scheme of distribution of, the last will and testament of Liz Otey Hoge Newman executed *October 4, 1979.* The [Newmans] do further hereby covenant not to bring or to be party to any action at law or in equity against the estate of Liz Otey Hoge Newman, or against any personal representative thereof, or against any beneficiary thereunder.

The provisions italicized above represent the only changes in the draft submitted by the Dekkers. Following Walter Newman's death, the Dekkers repudiated the alleged agreement, and this litigation ensued.

The question presented is whether the bill of complaint alleges facts which, if true, support a finding that the parties reached an enforceable agreement. The function of a demurrer is to test whether a bill of complaint states a cause of action upon which relief can be granted, and a demurrer admits as true all allegations of material facts which are well pleaded. *Bellamy* v. *Gates and Gill*, 214 Va. 314, 315-16, 200 S.E.2d 533, 534 (1973). *See also Washington* v. *Garrett*, 189 Va. 57, 61, 52 S.E.2d 83, 85 (1949).

The Dekkers made an offer to the Newmans which was accepted with slight modifications. A fair reading of the bill of complaint and exhibits indicates that the Dekkers accepted the modifications. Moreover, the Dekkers signed the agreement drafted by their attorney and sent it, with the promissory note and a $2,000 check, to the Newmans. The Newmans, after correcting certain clerical errors in the agreement, signed the corrected draft without making any substantive changes and sent it to the Dekkers. Thus, we conclude that the trial court erred in ruling that the bill of complaint fails to allege facts to support the existence of an agreement.

The trial court made an alternative ruling that even if the bill of complaint alleged an agreement, the agreement is unenforceable because it violates Code § 11-2(7). This section, a part of the Statute of Frauds, provides:

> No action shall be brought in any of the following cases:
>
> . . . .
>
> (7) Upon any agreement that is not to be performed within a year.
>
> Unless the promise, contract, agreement, representation, assurance, or ratification, or some memorandum or note thereof, be in writing and signed by the party to be charged thereby, or his agent; . . .

Clearly, the bill of complaint alleges writings signed by the Dekkers, the parties to be charged. Both the first letter to the Newmans and the letter to the Dekkers' attorney stated the terms of the agreement and were signed. The Dekkers also signed their draft of the agreement, which, as previously noted, was accepted by the Newmans. Therefore, because the alleged agreement complies with the requirements of Code § 11-2(7), we also find that

the trial court erred in sustaining the demurrer on the second ground.

Accordingly, we will reverse the judgment of the trial court and remand the case for further proceedings consistent with the views expressed herein.

*Reversed and remanded.*