# Harold G. Grossmann

## v.

# M. Guy Saunders, et al.

Record No. 860310

January 13, 1989

Present: Carrico, C.J., Poff,* Compton, Stephenson, Russell, Thomas, and Whiting, JJ.

---

\* Justice Poff participated in the hearing and decision of this case prior to the effective date of his retirement on December 31, 1988.

*George Mason, III; Lynn C. Brownley (Mason, Williams and Mason,* on brief), for appellant.

*Robert O. Tyler; John D. Epps; Jessica Sanders Jones (Paul G. Saunders, II; Roberta A. Motherway; Robert F. Brooks; Edward B. Koehler; Tyler, Bartl, Burke & Albert; Browder, Russell, Morris & Butcher; Hunton & Williams,* on briefs), for appellees.

STEPHENSON, J., delivered the opinion of the Court.

This is an appeal from the trial court's judgment sustaining a demurrer to a motion for judgment brought against multiple defendants.

Harold G. Grossmann filed a motion for judgment against M. Guy Saunders and his wife, Carolyn K. Saunders (collectively, Saunders), American Vacation Resorts, Inc. (AVR), Community Federal Savings and Loan Association (Community Federal), and Bank of Virginia (the Bank). The motion for judgment contained nine counts, alleging, *inter alia*, breach of contract, breach of fiduciary duty, and intentional fraud. The trial court sustained demur-

rers filed by all defendants, and Grossmann appeals. By his assignments of error, Grossmann claims that the trial court erred in sustaining the demurrers filed by each defendant.

I

The facts alleged in Grossmann's motion for judgment are as follows. From December 17, 1980, to February 1, 1983, Grossmann and Saunders were partners in Belle Mount Associates, a general partnership in Richmond County. The partnership owned real estate in the county and operated a vacation resort or country club that sold memberships to the general public. Many of the sales were financed by the partnership, with portions of the purchase prices evidenced by notes made by the purchasers.

On February 1, 1983, Grossmann and Saunders entered into a dissolution agreement (the agreement) in which Grossmann assigned and transferred all his interest in the partnership to Saunders. The agreement was attached to and made a part of the motion for judgment. This appeal focuses upon clause 2 of the agreement, which provides as follows:

2. [Saunders] agrees to pay to [Grossmann] the sum of $100,000.00 upon the delivery of the deed aforesaid to the real property hereinabove described. [Saunders] covenants that he will continue to develop a country club in Richmond County, Virginia and will pay to [Grossmann] as additional consideration for the premises set forth in paragraph 1, as follows:

On January 1 of 1984, [Saunders] will designate ten (10) promissory notes for purchase of a country club membership payable to him, his successors or assigns, each having a principal value of not less than $5,000.00, provide to [Grossmann] a copy of the contract file for each of the notes, and set aside and pay to [Grossmann] on a monthly basis during the term of the notes the combined principal and interest collected therefrom for each of the said notes. During successive months and on the first day thereof, from February 1984 to September 1984, [Saunders] will designate and set aside, as set forth above, promissory notes according to the following schedule:

| | | | |
|---|---|---|---|
| February 1984 | - 12 notes | June 1984 | - 12 notes |
| March 1984 | - 14 notes | July 1984 | - 12 notes |
| April 1984 | - 10 notes | August 1984 | - 12 notes |
| May 1984 | - 12 notes | September 1984 | - 12 notes |

The aggregate principal value of the combined notes shall be in such an amount that their yield, including interest, over the term of the notes equals $1,000,000.00, to which end the number of contracts designated and set aside in September 1984 may be decreased or increased. During the first two years from the designation and setting aside of the notes as aforesaid, [Saunders] covenants that upon default in the payment of any of the notes by the maker thereof, he will cause a replacement note or notes of equal value to be set aside for the benefit of [Grossmann]; in the event of a default in the payment of any of the notes by the maker thereof after two years from the original note having been designated and set aside, [Saunders] covenants to assign the said note in default to [Grossmann] so that he may pursue any remedy available to him at law.

In the event that [Saunders] sells or transfers any interest in and to the assets which [Grossmann], by the terms hereof, shall convey to [Saunders], prior to the performance by [Saunders] of his obligations hereunder, [Saunders] covenants that from the proceeds of the sale or transfer of the assets, he will pay to [Grossmann] the unpaid balance of his indebtedness to [Grossmann], after allowance for the entire sum of the principal and interest paid, due, or to become due on the contracts which have been set aside for [Grossmann's] benefit, reserving, however, [Grossmann's] recourse against [Saunders] on all such contracts as may thereafter go into default within two years after they have been originally set aside.

In clause 4 of the agreement, Saunders further agreed to be solely responsible for all liabilities of the partnership and to "indemnify and hold [Grossmann] blameless . . . from all such liabilities." Among the partnership debts were notes in the aggregate amount of $1,200,000 that Saunders agreed "to pay forthwith."

Grossmann properly performed all his obligations and duties under the agreement by surrendering his interest in the partnership to Saunders. Saunders, in turn, paid to Grossmann the initial

cash payment of $100,000. On brief, Grossmann concedes that Saunders paid the "various joint obligations . . . as required by Clause 4."

Saunders, "in accordance with [the agreement], [did] designate, set aside and segregate certain notes as . . . Grossmann's . . . , the yield of which totalled $1,000,000.00." The "designated notes were separately maintained, . . . catalogued on a computer list and on a written ledger . . . and were in all respects and particulars identified as . . . Grossmann's notes." Saunders and AVR furnished Grossmann with copies of the notes.

Saunders incorporated AVR and transferred to it the assets of the former partnership. AVR "is solely owned and controlled by [Saunders]," and "the notes . . . are payable to it" as the "successor" to Saunders. Saunders and AVR forwarded payments received on the notes together with an accounting to Grossmann each month through September 1984. "[I]n collecting, accounting and paying over the proceeds of the . . . notes," Saunders and AVR acted for Grossmann "in a fiduciary capacity."

Saunders and AVR paid to Grossmann "a total of $53,322.53 . . . as proceeds of . . . [the] notes through September 1984," but made no further payments thereafter "in breach of [the agreement] and the . . . fiduciary duty." Although Grossmann has demanded payment of the sums in default under the agreement and delivery of the notes, Saunders and AVR have refused the demands and Grossmann "has been damaged thereby."

On November 30, 1984, Grossmann brought a chancery suit "to enjoin [Saunders and AVR] from disposing of [the] notes . . . . [O]n the eve of [the] injunction hearing, [however, Saunders and AVR] gave [the] notes . . . to [the Bank and Community Federal] in contravention of [Grossmann's] interest in and claim to [the] notes." Prior to the time the notes were given to the Bank and Community Federal, they had actual notice of "Grossmann's interest in and claim to [the] notes." Thus, Grossmann asserts, his claim to and interest in the notes "is superior to that of all of the defendants."

Grossmann alleges in the motion for judgment that all defendants have breached the agreement.* He specifically alleges that Saunders and AVR breached the agreement by (1) ceasing to

---

* Grossmann also alleged breach of fiduciary relationship and fraud, but he did not advance these theories on appeal. Therefore, we will not address these issues.

make payments to him, (2) transferring the notes to the Bank and Community Federal, (3) failing to "set aside and pay the proceeds of [the] notes to [Grossmann]," and (4) ceasing "to develop a country club or resort." In sustaining each defendant's demurrer, the trial court ruled that Grossmann's motion for judgment "failed to state a cause of action" against any of the defendants.

## II

■ The office of a demurrer is to test whether a motion for judgment states a cause of action upon which relief can be granted. A demurrer admits the truth of all material facts well pleaded, including facts expressly alleged and all reasonable inferences arising therefrom. *Bowman* v. *State Bank of Keysville*, 229 Va. 534, 536, 331 S.E.2d 797, 798 (1985); *Penick* v. *Dekker*, 228 Va. 161, 166, 319 S.E.2d 760, 763 (1984).

Grossmann contends that he alleged a cause of action for breach of contract against Saunders and AVR in two particulars: (1) Saunders and AVR breached the agreement when they ceased making payments to Grossmann from money they received on notes set aside and designated for Grossmann and when they transferred the notes to the Bank and to Community Federal, and (2) Saunders and AVR breached the agreement when they ceased to develop a country club.

AVR contends at the outset that because it was not a party to the agreement it is not liable for its breach. We do not agree.

■ Although AVR was not a party to the agreement, it was incorporated by and "solely owned and controlled" by Saunders. As Saunders' "successor," AVR received the assets that Saunders had acquired from Grossmann and conducted the business formerly conducted by Saunders. Moreover, AVR sent copies of the notes, payments received on the notes, and accountings to Grossmann. Based upon these facts and all reasonable inferences deducible therefrom, a fact finder reasonably could conclude that AVR acquired Saunders' rights and assumed Saunders' obligations under the agreement. *See Heating Corp.* v. *Dillon Sup. Co.*, 156 Va. 597, 606, 159 S.E. 78, 81 (1931) ("When a party assumes the contract, or undertaking, of another he makes it his contract.").

As part consideration for Grossmann's interest in the partnership, Saunders agreed to designate and set aside sufficient notes to yield $1,000,000, if the principal and interest were paid according to the tenor of the notes. Saunders also agreed to set aside and

pay to Grossmann on a monthly basis all sums collected by Saunders from the makers of the notes during the term of the notes.

Saunders did "designate, set aside and segregate certain notes as . . . Grossmann's . . . , the yield of which totalled $1,000,000.00." Through September 1984, Saunders also paid all sums collected on the notes ($53,322.53) to Grossmann. After September 1984, however, Saunders ceased paying to Grossmann "the principal and interest due from the designated notes." Additionally, Saunders and AVR transferred the designated notes to the Bank and to Community Federal.

■ Relying upon the third paragraph in clause 2 of the agreement, Saunders and AVR assert that they had the right to sell or transfer the notes. Their reliance is misplaced because that paragraph relates solely to the sale or transfer of "any interest in and to the assets which [Grossmann] . . . shall convey to [Saunders], prior to the performance by [Saunders] of his obligations" under the agreement. None of the notes designated and set aside for Grossmann, however, existed at the time the agreement was executed. Thus, because the notes were not assets that Grossmann conveyed to Saunders, the third paragraph of clause 2 is inapplicable.

■ Saunders and AVR also assert that they had a right to transfer the notes because the agreement contained no express prohibition against such transfer. This argument, however, misses the mark. Saunders, as previously noted, had a contractual duty to "designate and set aside" certain notes as Grossmann's. Saunders and AVR breached that obligation by transferring the designated notes to the Bank and Community Federal.

In clause 2, Saunders agreed "that he will continue to develop a country club in Richmond County." Grossmann alleges, however, that Saunders and AVR "have ceased to develop a country club . . . in breach of the [agreement]."

■ Saunders responds that because the agreement "contains no express time period during which Saunders undertook to continue to develop the country club, it is only logical to conclude that Saunders gave the development his best effort, and that that was all that was intended by the parties." Obviously, Saunders' response necessitates proof of facts in an evidentiary hearing — an impossibility at the demurrer stage of the proceedings. Indeed, when a contract is silent as to the time within which an act is to be performed, the law implies a reasonable time, *Merriman* v.

*Cover*, 104 Va. 428, 442, 51 S.E. 817, 821 (1905), and what constitutes a reasonable time is generally an issue to be decided by a properly instructed jury, under all the circumstances of the case, *Duke* v. *Norfolk & W. R. Co.*, 106 Va. 152, 155, 55 S.E. 548, 549 (1906).

■ Assuming, as we must, the truth of the facts alleged and all reasonable inferences arising therefrom, we conclude that Grossmann's motion for judgment states a cause of action for breach of contract against Saunders and AVR. Therefore, the trial court erred in sustaining their demurrers.

## III

We next consider whether Grossmann stated a cause of action against the Bank and Community Federal. He argues that under the provisions of the Uniform Commercial Code — Secured Transactions, Code §§ 8.9-101 through -507, the Bank and Community Federal "do not possess a security interest superior to the interest of Grossmann in the notes designated for Grossmann." He primarily relies upon Code § 8.9-203, which sets forth the formal requisites for the attachment and enforceability of a security interest. The section provides in pertinent part:

(1)  [A] security interest is not enforceable against the debtor or third parties with respect to the collateral and does not attach unless

(a)  the collateral is in the possession of the secured party pursuant to agreement, or the debtor has signed a security agreement which contains a description of the collateral . . . ; and

(b)  value has been given; and

(c)  the debtor has rights in the collateral.

Specifically, Grossmann asserts that his interest in the designated notes is superior to that of the Bank and Community Federal because (1) no proof can be adduced at the demurrer stage that they possess the notes "pursuant to agreement," as required by Code § 8.9-203(1)(a); (2) Saunders had no rights in the designated notes sufficient to transfer a security interest as required by Code § 8.9-203(1)(c); and (3) the Bank and Community Federal allegedly had actual notice of his prior claim.

The Bank and Community Federal argue that their possession of the notes affords them a security interest in the notes superior to that of Grossmann. They assert that the amended motion for judgment evidences that they hold the notes "pursuant to agreement," as required by Code § 8.9-203(1)(a). They point to the allegations that Saunders "gave" the notes to them and that they have received payments collected from the notes.

A secured party's mere possession of collateral is not sufficient to establish a security interest. A security interest does not attach unless "the collateral is in the possession of the secured party *pursuant to agreement.*" Code § 8.9-203(1)(a) (emphasis added).

Code § 8.1-201(3) defines "[a]greement" as "the bargain of the parties in fact as found in their language or by implication from other circumstances including course of dealing or usage of trade or course of performance." An agreement need not be in writing when the collateral is in the possession of the secured party. Code § 8.9-203, Official Comment 3. Nevertheless, evidence of agreement must establish that the secured party possesses the collateral for the purpose of securing the debtor's obligation. *See Cantor* v. *Anderson*, 639 F. Supp. 364, 367-68 (S.D.N.Y.), *aff'd*, 833 F.2d 1002 (2d Cir. 1986).

Here, however, the allegations contained in the motion for judgment and the inferences deducible therefrom do not establish that Saunders had obligations to the Bank and Community Federal. The allegations merely demonstrate that he "gave" or "transferred" the notes to the Bank and Community Federal, and the Bank and Community Federal subsequently received payments collected on the notes. Thus, an evidentiary hearing is required to establish that Saunders provided the Bank and Community Federal with a security interest in the notes for the purpose of securing an obligation he has to each party. If the Bank and Community Federal cannot show that possession of the notes was taken with the purpose of creating a security interest, their possession cannot operate to give them a perfected possessory security interest. *Cf. In re Lewis*, 70 Bankr. 699, 703-04 (Bankr. D. Kan. 1987).

We next address Grossmann's argument that Saunders' rights in the notes were insufficient to transfer a security interest. Generally, a debtor has "rights in the collateral" sufficient to predicate the attachment of a security interest if he has possession

of the collateral with contingent rights of ownership. *Morton Booth Co.* v. *Tiara Furniture, Inc.*, 564 P.2d 210, 214 (Okla. 1977). *See In re County Green Ltd. Partnership*, 438 F.Supp. 693, 696 (W.D. Va. 1977); *AMFAC Mortg. Corp.* v. *Arizona Mall of Tempe*, 127 Ariz. 70, 73-74, 618 P.2d 240, 243-44 (App. 1980). A contingent right of ownership may exist where a debtor gains possession of collateral pursuant to an agreement endowing him with an interest greater than naked possession. *Morton Booth Co.*, 564 P.2d at 214.

In the case at hand, Saunders, the debtor, retained possession of the notes pursuant to an agreement that clearly endowed him with contingent rights of ownership. Specifically, the second paragraph of clause 2 of the agreement provided that "[d]uring the first two years from the designation and setting aside of the notes as aforesaid, [Saunders] covenants that upon default in the payment of any of the notes by the maker thereof, [Saunders] will cause a replacement note or notes of equal value to be set aside for the benefit of [Grossmann]." This provision clearly demonstrates that Saunders retained ownership rights in the designated notes. We hold, therefore, that based upon the pleadings, Saunders had sufficient rights in the collateral to predicate the attachment of a security interest under Code § 8.9-203(1)(c).

Our final inquiry concerns Grossmann's argument that his interest in the notes is superior to that of the Bank and Community Federal because they had actual notice of his prior claim. Code § 8.9-312 sets forth the rules of priority for situations involving conflicting security interests in the same collateral. Code § 8.9-312(5) provides in pertinent part:

> In all cases not governed by other rules stated in this section, . . . priority between conflicting security interests in the same collateral shall be determined according to the following rules:
>
> (a) Conflicting security interests rank according to priority in time of . . . perfection. Priority dates from the time . . . the security interest is first perfected . . . .
>
> (b) So long as conflicting security interests are unperfected, the first to attach has priority.

The parties agree that the collateral in question falls within the definition of a nonnegotiable "instrument," i.e., a "writing which

evidences a right to the payment of money and is not itself a security agreement or lease and is of a type which is in ordinary course of business transferred by delivery with any necessary indorsement or assignment." Code § 8.9-105(1)(i). A security interest in instruments "can be perfected only by the secured party's taking possession," subject to certain exceptions not applicable here. Code § 8.9-304(1).

Generally, whether a secured party had actual notice of a prior security interest is not a relevant consideration in determining priorities. Code § 8.9-312(5) contains no provision establishing lack of notice as a prerequisite for its operation. The absence of a notice provision is particularly significant in light of the presence of notice provisions in other sections of the Uniform Commercial Code — Secured Transactions. *See, e.g.,* Code §§ 8.9-301(1)(c), -301(1)(d), -301(4), -308(a).

Example 2 of the Official Comment to Code § 8.9-312 lends further support to the position that lack of notice is not required. A and B make non-purchase money advances against the same collateral. The debtor is in possession of the collateral, and neither A nor B has perfected his security interest when a second advance is made. "Whichever secured party first perfects his interest (by taking possession of the collateral or by filing) takes priority and *it makes no difference whether or not he knows of the other interest at the time he perfects his own.*" (Emphasis added.)

Our conclusion is consistent with the weight of other decisional authority. *See, e.g., First Nat'l Bank and Trust Co.* v. *Atlas Credit Corp.*, 417 F.2d 1081, 1082 (10th Cir. 1969); *In re Southwest Pennsylvania Natural Resources, Inc.*, 11 Bankr. 900, 902 (Bankr. W.D. Penn. 1981); *In re Smith*, 326 F. Supp. 1311, 1313 (D. Minn. 1971); *Shallcross* v. *Community State Bank & Trust Company*, 180 N.J. Super. 273, 278-80, 434 A.2d 671, 674-76 (1981); *Bloom* v. *Hilty*, 427 Pa. 463, 469-70, 234 A.2d 860, 863-64 (1967). Similarly, a leading commentator states unequivocally that "under Section 9-312(5), . . . knowledge is not a factor." 1B Coogan, Hogan, and Vagts, *Secured Transactions Under the Uniform Commercial Code* § 15.11[1][c], at 15-71 (1988). *Accord* J. White & R. Summers, *Handbook of the Law Under the Uniform Commercial Code* § 24-4, at 1132 (3d ed. 1988).

Although lack of notice is not a prerequisite to the operation of Code § 8.9-312(5), Code § 8.1-203 provides that "[e]very

contract or duty within this act imposes an obligation of good faith in its performance or enforcement." Accordingly, allegations and proof of "a leading on, bad faith or inequitable conduct" on the part of a secured party may affect the priorities established under Code § 8.9-312(5) by estopping the assertion of a priority. *Shallcross*, 180 N.J. Super. at 281, 434 A.2d at 676. *See Bloom*, 427 Pa. at 471, 234 A.2d at 863-64.

▮ In the present case, the inferences fairly deducible from the allegations contained in the amended motion for judgment warrant an evidentiary hearing to determine whether the Bank and Community Federal met their respective obligations of good faith.

### IV

In sum, we hold that Grossmann has stated a cause of action against Saunders and AVR for breach of contract. We further hold that Grossmann is entitled to an evidentiary hearing to determine whether his interest in the designated notes is superior to that of the Bank and Community Federal. We, therefore, will reverse the judgment of the trial court and remand the case for further proceedings consistent with the views expressed herein.

*Reversed and remanded.*