998 F.2d 1010
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
PERRY ENGINEERING COMPANY, INCORPORATED, Plaintiff-Appellant,
v.
AT & T COMMUNICATIONS, INCORPORATED, Defendant-Appellee.
 No. 92-2050.
 United States Court of Appeals,
Fourth Circuit.
 Argued: May 6, 1993.
Decided: July 13, 1993.
 
 Appeal from the United States District Court for the Western District of Virginia, at Harrisonburg. James H. Michael, Jr., District Judge. (CA-90-153-H)
 Argued: Gerald Isadore Katz, Katz & Stone, Vienna, Virginia, for Appellant.
 John Foster Anderson, McGuire, Woods, Battle & Boothe, Alexandria, Virginia, for Appellee.
 W.D.Va.
 AFFIRMED.
 Before PHILLIPS, NIEMEYER, and WILLIAMS, Circuit Judges.
 PER CURIAM:
 
 OPINION
 
 1
 Perry Engineering Co. brought this breach of contract action against AT & T Communications, Inc., seeking damages for cost-overruns in a construction contract. AT & T asserted that Perry was not entitled to additional compensation because it had failed to comply with the contract's procedure for obtaining compensation for expenses related to work changes. The district court agreed and granted summary judgment for AT & T. We affirm.
 
 
 2
 * Perry and AT & T entered into a contract under which Perry promised to provide all necessary labor and equipment to install approximately seventy miles of fiber optic cable in remote parts of West Virginia. The contract incorporated estimates AT & T had prepared regarding the work requirements which indicated that the cable was to be buried at a depth of forty-four inches. The estimates also indicated that 4,500 cubic yards of rock would be excavated using a jackhammer or hoe-ram at $50 per cubic yard and that 100 cubic yards of rock would be excavated using a trencher at $100 per cubic yard.
 
 
 3
 The actual specifications for burial of the cable, which were not included as part of the contract, provided for variations in the forty-four inch depth mentioned in the contract. These specifications indicated the cable was to be buried at a depth of forty-eight inches, but that the depth could be as little as twenty-four inches where solid rock was encountered.
 
 
 4
 Installation of the cable did not proceed on schedule. In order to allow timely completion of the project, the burial depth of the cable was modified to twenty-four inches with steel casing, regardless of the terrain. The parties dispute whether AT & T or Perry initiated this change, but its result is clear. Most of the excavation at the twenty-four inch depth was accomplished with a trencher, not a jackhammer or hoe-ram. Although AT & T paid Perry for this work at the higher rate of $100 per cubic yard, Perry, relying on the 4,500 cubic yard estimate, had already rented jackhammers that sat idle throughout the remainder of the project.
 
 
 5
 Ten months after completion of work, Perry asked AT & T to compensate it for the cost of this idle equipment. AT & T asserted that under the contract Perry was only entitled to compensation on a unit price basis. To the extent that the costs for idle equipment were caused by changes in the contract, AT & T claimed that Perry had not complied with contractual notice requirements in the"changes" clause of the contract that were a condition precedent for additional compensation.
 
 
 6
 Perry brought this action in Virginia state court for breach of contract, and AT & T removed the action under the diversity jurisdiction of the district court. The district court determined that the idle equipment expenses were caused by a change in the contract, and hence that the "changes" clause of the contract applied. The district court also determined that the "changes" clause in the contract was clear and unambiguous, that Perry had not provided timely notice, and that AT & T was therefore not obligated to recompense Perry for the additional expenses. Accordingly, the district court granted summary judgment for AT & T. Perry now appeals.
 
 II
 
 7
 Perry urges that the court erred in three respects. First, Perry contends that the parties did not foresee that changes in the contract might result in additional expenses for idle equipment, and hence that the contract does not determine who bore the risk of incurring such expenses. Perry asks the court to determine, independently of the contract, who bore this risk. Second, Perry urges that if the contract does determine the rights of parties with regard to expenses for idle equipment, then AT & T has waived the requirement of timely notice. Perry contends that, with the exception of the ten-day timeliness requirement, the letter it sent to AT & T requesting additional compensation complies with the procedure set forth in the contract for obtaining additional compensation. Finally, Perry urges that because the contract is ambiguous regarding the rights of the parties, it is entitled to recover in quantum meruit.
 
 
 8
 We review de novo the district court's grant of summary judgment. Baber v. Hospital Corp. of Am., 977 F.2d 872, 874 (4th Cir. 1992). A party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). With this standard in mind, we address Perry's arguments on appeal.
 
 III
 
 9
 Perry first contends that the contract does not determine the parties' rights with regard to idle equipment expenses incurred as a result of changes in the contract. Perry urges that, because the parties omitted any provision defining the parties' rights in these circumstances, this court should supply such a provision by implication.
 
 
 10
 "When the parties to a bargain sufficiently defined to be a contract have not agreed with respect to a term which is essential to a determination of their rights and duties, a term which is reasonable in the circumstances is supplied by the court." Restatement (Second) of Contracts § 204 (1979). "Interpretation is necessarily the first step in [this] process, since a court will supply a term only after it has determined that the language of the agreement does not cover the case at hand." 2 E. Allan Farnsworth, Farnsworth on Contracts § 7.16, at 303 (1990); see also Restatement (Second) of Contracts § 204 cmt. c.
 
 
 11
 With regard to interpretation of a contract, Virginia adheres to the plain meaning rule. Where "the terms of an agreement are clear and unambiguous, the language used will be taken in its ordinary signification, and the plain meaning will be ascribed to it." Marriott Corp. v. Combined Properties Ltd. Partnership, 391 S.E.2d 313, 316 (Va. 1990). Moreover, where "language is unambiguous, it is inappropriate to resort to extrinsic evidence; an unambiguous document should be given its plain meaning." Great Falls Hardware Co. v. South Lakes Village Ctr. Assocs. Ltd. Partnership, 380 S.E.2d 642, 643 (Va. 1989).
 
 
 12
 With these principles in mind, we review the language of the contract. The parties' agreement provided that AT & T would pay Perry no more that $1,705,818.00 for work done under the contract. The actual amount to be paid, subject to this cap, was to be determined based on a schedule of unit prices that gave estimates of the work to be done and the unit price to be paid. Although these estimates were provided by AT & T, the contract included a "Work Conditions" clause in which AT & T disclaimed any responsibilities for these estimates. This clause provided as follows:
 
 
 13
 By the execution hereof, the Contractor admits to being fully informed as to the nature and locations of the work, the physical climactic and other conditions prevailing at the work site, and all other matters which may in any way affect the work, the cost thereof, or the time for performing the work. By way of example but not limited to the foregoing, the Contractor admits: (1) having examined the specifications, drawings and all other contract documents; (2) having inspected the job site, the size and location of the work areas, the access thereto, and the availability of utilities; and (3) having fully informed himself as to the character, quality and quantity of the surface and subsurface materials and conditions to be encountered including, but not limited to, the rock, water, and soil conditions and the scope and amount of work required.
 
 
 14
 In the course of planning of the work, and solely for its own internal purposes, AT & T Communications may have contracted with independent contractors for consultative engineering work, geological studies, rock and survey reports, soil boring reports of other matters of an informational nature. Said engineering work, studies, reports or informational matter may be made available to the Contractor, at the option of AT & T Communications.
 
 
 15
 AT & T Communications does not warrant, guarantee, or in any manner assume responsibility for the accuracy, uniformity, or correctness of the statements, data, assertions, analyses, evaluations, or recommendations contained in the matter prepared by independent contractors. The Contractor is responsible for any conclusions drawn from the matter prepared by independent contractors. If the Contractor does not wish to assume the risk of drawing conclusions from this matter, he may employ, at no cost to AT & T Communications, his own experts to analyze the data presented, or make additional explorations, tests, or studies.
 
 
 16
 (J.A. at 79 (emphasis added).)
 
 
 17
 The contract also anticipated that changes in the project specifications might require adjustments in either the total price or the unit prices specified in the contract. The contract set forth the following detailed procedure for approving such changes and obtaining adjustments in prices:
 
 
 18
 CHANGES TEN: AT & T Communications' Representative may, during progress of the work, by written order to the Contractor and without notice to sureties, require additions or alterations to, or deductions from the work (hereinafter collectively call [sic] "changes.") No payment for changes shall be made unless the changes and the prices therefor have been authorized in writing by AT & T Communications' Representative as set forth below . Changes shall not affect the contract completion date unless so provided in the written order, and all changes shall be performed under the terms of this Contract unless otherwise specified in writing by AT & T Communications' Representative.
 
 
 19
 Changes which affect the contract price shall be covered by a written proposal submitted by the Contractor to AT & T Communications' Representative within ten days after receipt by the Contractor of a request or order for change. This proposal shall be accepted or rejected by AT & T Communications within twenty days after receipt thereof....
 
 
 20
 If the changes result in an increase or decrease in the Contractor's cost for performance of the work, the contract price shall be adjusted as follows:
 
 
 21
 A. If this Contract includes unit prices as a method of adjusting the contract price, then the unit prices insofar as applicable shall be applied.
 
 
 22
 B. If unit prices are not applicable, the following procedure shall be used:
 
 
 23
 (1) When changes result in an estimated net decrease in costs, the contract price shall be reduced by such net decreases but no adjustment shall be made for the overhead and profit.
 
 
 24
 (2) When changes result in an estimated net increase in cost, the contract price shall be increased by such estimated net increase in cost, plus the fee as specified in PARAGRAPH E of U554.
 
 
 25
 C. If the Contractor's proposal is rejected by AT & T Communications then, at the discretion of AT & T Communications' Representative, the Contractor may be required to proceed with the changes and will be paid by AT & T Communications on the basis of the actual reasonably incurred cost of the changes, plus the fee specified in PARAGRAPH E of U554....
 
 
 26
 (J.A. at 80-81 (emphasis added).)
 
 
 27
 We draw two conclusions from these provisions. First, the parties agreed that Perry bore the risk of any inaccuracies in the estimates of work to be done as specified in the schedule of unit prices. Estimates are by definition inexact. Under the Work Conditions Clause, Perry bore the responsibility for insuring the accuracy of the technical data upon which the estimates were based. Therefore, to the extent that the cost overruns were caused by inaccuracies in the project work estimates, as Perry suggests at points in its brief, Perry's claim lacks merit because the contract clearly places on Perry the risk that the estimates were inaccurate.
 
 
 28
 Second, the parties agreed to a specific procedure under which Perry could obtain additional compensation for alterations in the work to be performed under the contract. The agreement specifically contemplates that the procedure would apply not only for additional work, but also for alterations and deductions in work. Furthermore, the agreement contemplates that additional payments may be necessary where there is an estimated net increase in cost, indicating that the parties anticipated that alterations in the contract could have the effect of increasing and decreasing different costs. The contract therefore contemplates that changes in the project specifications could result in increased expenses such as idle equipment costs and provides a specific procedure for obtaining compensation for such expenses. Because the contract itself defines the rights and duties of the parties, we reject Perry's contention that we must supply an omitted term by implication.
 
 IV
 
 29
 We turn next to Perry's argument that AT & T waived the requirement of timely notice. Under the contract, Perry's submission of a written proposal regarding changes in price is a condition precedent to AT & T's duty to compensate Perry for additional expenses.[1] The contract requires that the proposal be submitted within ten days of AT & T's request or order for changes in work. Perry contends that AT & T waived the ten-day requirement by consistently approving untimely change orders, and hence that the proposal for additional compensation that it submitted ten months after completion of work satisfies the requirements of the contract.
 
 
 30
 Under Virginia law, waiver "is the voluntary, intentional abandonment of a known legal right. It has two essential elements: (1) knowledge of the facts basic to the exercise of the right, and (2) the intent to relinquish that right." Bergmueller v. Minnick, 383 S.E.2d 722, 725 (Va. 1989). Waiver need not be express: it may be inferred from the conduct of the waiving party. Woodmen of World Life Ins. Soc'y v. Grant, 38 S.E.2d 450, 454 (Va. 1946).
 
 
 31
 Perry submitted to the district court copies of twenty-one "Contract Change Orders" that Perry had submitted to AT & T within ten days of completion of changes. At most only four of the documents were submitted within ten days of AT & T's request for changes as required under the contract. AT & T approved all twenty-one change orders. AT & T acknowledges this practice, but contends that under the contract a waiver of rights on one occasion does not result in a general waiver of rights. The contract provides that: "No waiver of, or failure to exercise any option, right or privilege under the terms of this Contract on any occasion or occasions shall be construed to be a waiver of the same or any other option, right or privilege on any other occasion." (J.A. at 89.)
 
 
 32
 Although the contract's "no waiver" clause provides evidence of AT & T's intent, it does not necessarily control. Like all contractual rights, the rights under the "no waiver" clause are themselves subject to waiver. Cf. Zurich Gen. Accident & Liab. Ins. Co. v. Baum, 165 S.E. 518, 519 (Va. 1932) (contract can be modified by oral agreement notwithstanding clause requiring that all modifications be in writing). One could infer from AT & T's consistent practice of approving price adjustments submitted after ten days had elapsed that it intended to waive the ten-day deadline in all cases.
 
 
 33
 But even if AT & T did waive the ten day requirement, it does not follow that Perry was free to submit a proposal regarding changes in price at any time. Under Virginia law, "when a contract is silent as to the time within which an act is to be performed, the law implies a reasonable time." Grossmann v. Saunders, 376 S.E.2d 66, 70 (Va. 1989). No evidence suggests that AT & T intended to waive the implied legal requirement that an act be performed within a reasonable time.[2] Proposals submitted ten months after completion of work do not satisfy this requirement. We recognize that under Virginia law the determination of what constitutes a reasonable amount of time is normally reserved to a jury. Id. Nevertheless, issues such as reasonableness and negligence normally reserved to a jury may be resolved as a matter of law where only one conclusion may reasonably be drawn from the evidence. Flying Diamond Corp. v. Pennaluna & Co., 586 F.2d 707, 713 (9th Cir. 1978). Any doubt we might have regarding the reasonableness of the ten month delay in this case is resolved by the behavior of the parties, who consistently settled any price modifications caused by changes in work within ten days, not ten months, of completion of the changed work. A contractual notice requirement is rendered a meaningless nullity where parties are allowed to submit stale claims at such a late date as Perry attempted to do here. See United States ex rel. Honeywell, Inc. v. A & L Mechanical Contractors, Inc., 677 F.2d 383, 386 (4th Cir. 1982) (strictly enforcing statutory notice requirement).
 
 
 34
 Accordingly, we conclude that Perry did not comply with the changes section of the contract because it failed to submit a proposal regarding increased costs within a reasonable time of completion of the changes. Because submission of a timely proposal was a condition precedent to AT & T's duty to pay for increased costs, and because this condition was never satisfied, AT & T never became liable for the additional expenses. Therefore, AT & T did not breach the contract by refusing to pay Perry for the expenses.
 
 V
 
 35
 Although Perry also sought to recover under a quantum meruit theory, Perry concedes that quantum meruit is unavailable where the contract between the parties unambiguously defines the rights of the parties, as it does here.
 
 VI
 
 36
 Because we conclude that the "changes" clause of the contract governs the parties' dispute, that AT & T has not waived the requirement of timely notice, and that Perry did not provide timely notice, we find that AT & T is not obligated to cover Perry's expenses for idle equipment. Accordingly, we affirm the judgment of the district court.
 
 AFFIRMED
 
 
 [1]
 As Perry points out, the contract assumes that all changes will be initiated by a written order from AT & T, and does not anticipate either that Perry might initiate changes or that AT & T might effect changes through oral communication. Our concern here, however, is not with which party initiated a change but with obtaining compensation for the resulting increase in costs. In this regard, the contract is unambiguous. The changes section requires Perry to submit to AT & T a written proposal whenever an ordered change will increase costs. Perry complied with this requirement throughout the burial project
 
 
 [2]
 Waiver depends upon the intent of the waiving party, and the most reasonable inference to be drawn from the evidence regarding AT & T's intent is that the waiver here was limited in scope. The evidence suggests that AT & T limited its waiver to accepting proposals submitted within ten days of completion of changes. Perry suggests one could also infer that AT & T's waiver was not limited in scope. We have reservations about whether this inference is reasonable. Nevertheless, because all inferences must be drawn in Perry's favor on a motion for summary judgment, we assume that AT & T waived the ten-day requirement and that AT & T did not intend to limit the scope of its waiver. Accordingly, the question we must address is whether Perry submitted a proposal within a reasonable time