# CIRCUIT COURT OF THE CITY OF CHARLOTTESVILLE

Daggett & Grigg,
Architects, P.C.,
James P. Grigg,
and B. Clark Gathright

v.

William B. Daggett, Jr.

August 18, 2015

Case No. CL 14-410

By Judge Richard E. Moore

I have now read and re-read all of the pleadings in this case, including the letters submitted after the court hearing on March 23, 2015, as well as all of my notes. I have given consideration to all of the arguments and to pertinent case authority.

This case presents a question of interpretation of contractual provisions, in Counts 1 and 3 of the Complaint, and matters of fiduciary law in Count 2.

On October 3, 2014, Plaintiffs, Daggett & Grigg, Architects, P.C. ("D&G"), James P. Grigg, and B. Clark Gathright, filed this action against William B. Daggett, Jr., alleging three causes of action: (1) breach of contract with respect to the Memorandum of Understanding ("MOU"), (2) request for equitable accounting pursuant to § 8.01-31 based on fiduciary duties, and (3) breach of contract with respect to the Buy-Sell Agreement, for which specific performance is sought. On October 30, 2014, the Defendant filed his Demurrer to all counts, asserting (1) the facts on which the contract claim in Count 1 was based were not pleaded specifically enough, (2) the fiduciary claim cannot succeed because the MOU does not afford the basis for a fiduciary relationship and, in any event, such can only be brought derivatively on behalf of the corporation and not by individuals, and (3) Plaintiffs did not plead, in Count 3, a specific enough basis for the value of the shares to be transferred.

For the reasons set forth below, the Court will overrule the Demurrer with respect to all counts. I will address the arguments put forth in the Demurrer as well as at oral argument at the March 23 hearing and in subsequent letters to the Court. Counsel for the Defendant sent a letter dated March 24, 2015, and counsel for the Plaintiffs sent a letter dated March 30, 2015.

## Summary of the Facts

This is compiled mainly from the facts alleged in the Complaint.

The Defendant and Mr. Grigg formed D&G, an architectural services company, in 2002. In December 2005, Mr. Grigg and the Defendant each sold 5% of their interest in D&G to Mr. Gathright. On August 2, 2011, due to changing economic conditions and personal interests, the Defendant, Mr. Grigg, and Mr. Gathright executed the MOU that addressed a number of matters involving D&G (and which is the subject of Count One of the Complaint). One matter that was covered by the agreement was how funds anticipated from three particular projects yet to be completed, Octagon-Gleason, 550, and Morey Creek, were to be distributed. Except for those three projects, all funds received on any future work were to belong to each respective party. Funds received from these three projects were first to be applied to corporate, in effect, joint, debt. The Plaintiffs allege that the MOU required the Defendant to pay up to $200,000 from the Morey Creek Project to defray D&G's indebtedness.

Following the execution of this document, the parties generally performed in accordance with its terms. The Plaintiffs claim that, at some point, the Defendant failed to comply with the MOU because he received money from the Morey Creek Project but did not apply such to the D&G indebtedness as agreed. On February 1, 2014, Mr. Grigg received a letter from the Defendant stating that, effective January 31, 2014, he resigned as an officer, director, and employee of D&G. Additionally, it is alleged that, after his resignation, the Defendant did not sell back his shares after termination of employment with D&G as required by Section 5 of the Shareholder Buy-Sell Agreement upon demand by the Plaintiffs. The Plaintiffs then brought this suit alleging the three counts that are listed above.

## Standard of Review

A demurrer tests whether a motion for judgment sufficiently states a cause of action for which relief may be granted. *Grossman v. Saunders*, 237 Va. 113, 119, 376 S.E.2d 66, 69 (1989). In ruling on a demurrer, the court considers the legal sufficiency of the pleadings and not the strength of the proof, and considers the facts in the light most favorable to the plaintiff. *Glazebrook v. Board of Supervisors of Spotsylvania County*, 266 Va. 550, 554, 587 S.E.2d 589, 591 (2003); *Welding, Inc. v. Bland Cnty. Service Auth.*, 261 Va. 218, 226, 541 S.E.2d 909, 913 (2001); *Luckett v. Jennings*, 246 Va.

303, 307, 435 S.E.2d 400, 402 (1993). The court considers as admitted all facts expressly or impliedly alleged or that may fairly and justly be inferred from the facts alleged. *Glazebrook,* above; *Luckett,* above; *Grossman,* above; and cases cited therein.

Virginia is a "notice pleading" state. The key is adequate notice of the basis for the claim. As long as the claim contains sufficient allegations of material fact so as to inform the defendant of the nature and character of the claim, it will withstand a demurrer. *CaterCorp, Inc. v. Catering Concepts, Inc.,* 246 Va., 22, 24, 431 S.E.2d 277, 279 (1993). The pleadings must set forth sufficient facts to constitute a foundation in law for the judgment sought, not simply conclusions of law. *Kitchen v. City of Newport News,* 275 Va. 378, 385, 657 S.E.2d 132, 136 (2008) (citing *Hubbard v. Dresser, Inc.,* 271 Va. 117, 122, 624 S.E.2d 1, 4 (2006)). A complaint will withstand demurrer if it is drafted in such a way that the defendant is on notice of the "true nature" of the claim; the allegations may be supplemented in discovery. *Fein v. Payandeh,* 284 Va. 599, 607-08, 734 S.E.2d 655, 660 (2012); Rule 1:4 (d), Rules of the Virginia Supreme Court.

*Analysis*

A. *Count I: Breach of Contract; the MOU*

The Defendant argues that, as to the breach of contract claim with respect to the MOU, the Complaint fails to state a claim for which relief can be granted because the Plaintiffs failed to allege that the Defendant received "booked and anticipated" net proceeds in the amount contemplated or that such were "available." Defendant also claims that the Plaintiffs failed to allege sufficient facts to establish that Mr. Grigg or Mr. Gathright performed actions that were required under the MOU. Defendant claims that these failures are fatal.

In Virginia, it is only necessary that the plaintiff put the defendant on notice of the "true nature" or character of the claim. *Fein,* above, 284 Va. at 608, 734 S.E.2d at 660. The allegations in the complaint may be supplemented in discovery or by a Bill of Particulars in order to more fully develop the plaintiff's claim. *Id.* Given this relatively low bar for pleadings at the demurrer stage, I find that the Plaintiffs on this count have met their burden.

The elements of a breach of contract action are (1) a legally enforceable obligation, (2) a violation or breach of that obligation, and (3) injury or damage caused by such breach. *Filak v. George,* 267 Va. 612, 619, 594 S.E.2d 610, 614 (2004). Plaintiffs have provided Defendant with information concerning the contract that they believe he breached, the MOU, and alleged that it was valid and attached the contract to the Complaint. Additionally, they explained the actions that they believe show that the Defendant violated the agreement and the injuries that resulted.

Specifically, the Complaint alleges that the Defendant failed to put money he received for work on the Morey Creek Project towards D&G's indebtedness. This action, they assert, was in violation of the terms of the MOU. Given these allegations in the Complaint, it appears that the Plaintiffs have asserted facts that are sufficient to withstand a demurrer with respect to Count I.

As to the specific terms, i.e., "words," at issue, the Court gives "booked and anticipated" their plain meaning in the context of the MOU. The provision in the MOU itself, in the Court's view, sets forth the "booked and anticipated" amounts. It seems to the Court that "anticipated" meant anticipated at the time of the agreement (MOU) because they had not been received yet. As for "booked," clearly the MOU states the "book value" of Octagon-Gleason as $97,987.00. What is not clear is whether that just applies to the Octagon-Gleason line, or applies to 550 and Morey Creek as well, but I do not think it matters. The next line says "total 'anticipated' proceeds to be applied to debt." So the line in the second paragraph of Section 4 is simply parroting this terminology. It states what is expected from these three jobs, and up to that amount received is to be applied to the debt, and anything above or in excess of that is not. The Defendant is not prevented at trial from attempting, by evidence, to show that he did not actually receive funds subject to the obligation to apply them to the indebtedness. But this is a question of fact for the jury (or the Court as the fact-finder), and not a matter of law.

As to "available," it is pleaded that Defendant received proceeds. If the Defendant wishes to argue and present evidence on the construction of the contract that they were not available until expenses are netted out, a reasonable possible construction, they may do so. (And Count II mentions professional expenses, although Count I does not.) But I find that the count is sufficiently pleaded to put the Defendant on notice of what is being asserted, alleged, and sought. Clearly the inference is that the received funds were "available." I do not find that these terms constitute a "condition precedent" that must be pleaded. As Plaintiffs assert, arguments about the meaning of terms go to the weight and interpretation of the contract, and not to whether they have stated a claim under it. Such issues might be the subject of a Motion *in Limine*.

Turning to Defendant's claim that the Plaintiffs failed to allege that they performed certain required actions under the MOU, the Complaint alleges that Mr. Gathright and Mr. Grigg made efforts and complied with the MOU and explains why Mr. Gathright and Mr. Grigg were unable to contribute to D&G's indebtedness. But the Defendant's obligation to apply any funds he received to the corporate debt was not specifically linked to nor dependent upon Grigg and Gathright receiving additional funds on the other two projects or applying funds to the debt. Perhaps this could be the

basis for a counterclaim or set-off, if pleaded by Defendant. But Plaintiffs do not have to plead such.

Whether the funds received were "booked and anticipated" or "available" and whether the terms of the contract have actually been complied with are issues that should be decided by the trier of fact, subject to evidentiary proof. At the demurrer stage, the Court should not resolve such issues, but, instead, should review the pleadings in the light most favorable to the Plaintiff to determine if they have at the very least given notice of the "true nature" of the claim. The Court finds that the Plaintiff has met this test with respect to Count I.

### B. Count II: Equitable Accounting/Fiduciary Duty

Defendant next claims that he did not owe a fiduciary duty to the Company or Plaintiffs under the MOU agreement, as the Company was not a party to the MOU and income from any work is deemed to be individual income to whoever performed the work. As a result, the Defendant argues that § 8.01-31 of the Virginia Code is not applicable because it only allows equitable accounting against "*any fiduciary* or by one joint tenant, tenant in common, or coparcener." Va. Code Ann. § 8.01-31 (emphasis added). The fatal problem with this argument is that it does not appear that the Complaint relies on the MOU in Count II. Count II, in the Court's view, is not based on the MOU, but rather is pleaded in the alternative (e.g., "in addition to," in ¶ 23), if for any reason the MOU is deemed not valid or not controlling. The Complaint states that, "[w]hile Plaintiffs contend that the MOU is valid and enforceable, if it were not, the proceeds of the Morey Creek Project would have belonged to D&G, and Daggett's appropriation of that business to himself ... would be a violation of his fiduciary duty to D&G and its shareholders." Plaintiff's argument in Count I is that, under the MOU, if Defendant did not pay over the amount received towards the corporate debt, he is in violation of the MOU. But, if the MOU is not in effect or did not exist, he would still have to give up the funds because all funds, in the absence of the MOU, would belong to the corporation. Plaintiffs are not alleging that the MOU puts the Defendant in a fiduciary role or creates a fiduciary obligation. Instead, they are claiming that, if the MOU is not enforced, then the Defendant still owed fiduciary duties to the corporation and shareholders and said duties were breached. In essence, they are arguing that, without the MOU or but for it, all proceeds and funds received belong to the corporation, and all three individual parties would have a fiduciary duty to the corporation and its shareholders. Neither of them would be entitled to any funds individually but for the MOU. Without it all income is corporate income, subject to a fiduciary duty.

Moreover, the Plaintiffs allege in ¶ 13 that the Defendant was an officer and director of the Complainant and they later assert, in ¶ 22, that officers and directors owe fiduciary duties to the corporation and its shareholders.

Therefore, even if the MOU is in force, it appears that the Plaintiffs are arguing that the duties do not derive from the MOU, but instead arise from the positions that the Defendant held. Therefore, this appears to be sufficient, as an alternative theory, to withstand a demurrer despite the fact that the theories are contradictory.

The Plaintiffs are permitted to allege in their Complaint alternative theories that may conflict, which appears to be what they did in Count II. Rule 1:4(k) states:

> A party asserting … a claim … may plead alternative facts and theories of recovery … provided that such claims … arise out of the same transaction or occurrence… . A party may also state as many separate claims … as he has regardless of consistency and whether based on legal or equitable grounds.

As a result, it is permissible for the Plaintiff to allege in one count that the MOU is valid and then allege in another count that, if it is not valid, relief is nonetheless available because of another theory. Therefore, the Court overrules the Defendant's Demurrer with respect to Count II.

## C. Count III: Breach of Contract; the Buy-Sell Agreement

According to the Defendant, Count III fails to state a claim because Plaintiffs failed to apprise the Defendant of the change in book value of the stock, Plaintiffs did not provide a calculation of how they arrived at the stock's worth, and Plaintiffs did not allege that their calculations complied with generally accepted accounting principles, as required by the Buy-Sell Agreement. These issues delve into the facts of the case and what is actually required under the terms of the Buy-Sell Agreement. It would seem that how the Plaintiffs calculated the share value can be investigated in discovery, or a Bill of Particulars can be requested.

Plaintiffs allege that, when the Defendant resigned, this triggered a right on their part to purchase ("may"), and an obligation on the Defendant's part to sell ("shall"). The value is to be determined by a formula and is subject to proof. All that is necessary is that the Plaintiff make a demand to sell and transfer, which they allege they did. (¶ 29.) In the Court's opinion it is not required to allege how they reached the value, although they did generally. It is subject to proof, and a matter for evidence and argument. And the obligation arises upon the resignation and demand; the Plaintiffs do not need to make an "offer," as addressed in the letter memos.

Moreover, if Mr. Gathright and Mr. Grigg's actions were not in compliance with the Buy-Sell Agreement, then that could potentially provide a defense to the Defendant. But it is not appropriate for the Court to decide these issues at a demurrer stage because they are questions of fact that ultimately should be reserved for the trier of fact. Therefore, the Court

finds that the Plaintiffs have asserted sufficient facts to alert the Defendant to the true nature of their claims with respect to the breach of the Buy-Sell Agreement (valid contract, breach of Section 5, resulting injury, loss, or damage). Count III withstands the Demurrer challenge as well.

Finally, with respect to Counts II and III, the Defendant argues that the individual Plaintiffs lack standing to bring the causes of action because the company should bring the claims in a derivative action. This argument fails because it ignores that D&G is a named Plaintiff in this case, and, even if the corporation were not a plaintiff, Grigg and Gathright can be seen in Counts II and III as acting on behalf of the corporation and shareholders, as paragraphs 22, 23, and 24 clearly refer to the duty owed to the Corporation and its shareholders.

### Conclusion

The Demurrer is, therefore, overruled with respect to all counts.